314 U.S. 63 (1941)
INDIANAPOLIS ET AL.
v.
CHASE NATIONAL BANK, TRUSTEE, ET AL.[*]
Nos. 10 and 11.
Supreme Court of United States.
Argued February 6, 7, 1941.
Reargued October 15, 16, 1941.
Decided November 10, 1941.
CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.
*64 Mr. Howard F. Burns, with whom Messrs. John Adams and Harvey J. Elam were on the brief, for the Chase National Bank, at both hearings.
Mr. William H. Thompson, with whom Messrs. Perry E. O'Neal, Patrick J. Smith, and Edward H. Knight were on *67 the brief, for the City of Indianapolis et al., at both hearings.
Mr. William G. Sparks, with whom Mr. Paul Y. Davis was on the brief, for the Citizens Gas Co.
Mr. William R. Higgins for the Indianapolis Gas Co., at both hearings. Mr. Louis B. Ewbank was with him on the brief and at the first hearing.
*68 MR. JUSTICE FRANKFURTER delivered the opinion of the Court.
This is a suit instituted by the Chase National Bank, a New York corporation, in the federal District Court for the Southern District of Indiana, naming as defendants the Indianapolis Gas Company, the Citizens Gas Company of Indianapolis (Indiana corporations), and the City of Indianapolis. (For brevity's sake the parties will be referred to as Chase, Indianapolis Gas, Citizens Gas, and the City, respectively.) The power of the District Court to entertain this litigation was sustained by the Circuit *69 Court of Appeals for the Seventh Circuit under the provision of the Judicial Code conferring upon the district courts jurisdiction "Of all suits of a civil nature . . . where the matter in controversy exceeds . . . three thousand dollars, and .. . is between citizens of different States . . ." 36 Stat. 1091; 28 U.S.C. § 41 (1). The correctness of this jurisdictional ruling must be determined before the merits of Chase's claims can be considered. The specific question is this: Does an alignment of the parties in relation to their real interests in the "matter in controversy" satisfy the settled requirements of diversity jurisdiction?
As is true of many problems in the law, the answer is to be found not in legal learning but in the realities of the record. Though variously expressed in the decisions, the governing principles are clear. To sustain diversity jurisdiction there must exist an "actual," Helm v. Zarecor, 222 U.S. 32, 36, "substantial," Niles-Bement-Pond Co. v. Iron Moulders Union, 254 U.S. 77, 81, controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side. Strawbridge v. Curtiss, 3 Cranch 267. Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is our duty, as it is that of the lower federal courts, to "look beyond the pleadings and arrange the parties according to their sides in the dispute." Dawson v. Columbia Trust Co., 197 U.S. 178, 180. Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary "collision of interests," Dawson v. Columbia Trust Co., supra, at 181, exists, is therefore not to be determined by mechanical rules. It must be ascertained from the "principal purpose of the suit," Easi Tennessee, V. & G.R. v. Grayson, 119 U.S. 240, 244, and the "primary and controlling matter in dispute," Merchants' Cotton Press Co. v. Insurance Co., *70 151 U.S. 368, 385. These familiar doctrines governing the alignment of parties for purposes of determining diversity of citizenship have consistently guided the lower federal courts[1] and this Court.[2]
And so we turn to the actualities of this litigation.
Chase is the trustee under a mortgage deed, to secure a bond issue, executed by Indianapolis Gas in 1902. In 1906 Citizens Gas was formed to compete with Indianapolis Gas in the distribution of light, heat, and power to the people of Indianapolis. Its franchise provided that after the expiration of twenty-five years and the performance of certain specified conditions, the company should be wound up and its property conveyed to the City subject to the company's "outstanding legal obligations." The competition between the two gas companies continued until 1913, when Indianapolis Gas leased all of its gas plant property to Citizens Gas for a term of ninety-nine years. Citizens Gas agreed to pay as rental (a) the interest on the lessor's outstanding bonded indebtedness, and (b) annual sums equal to a six per cent return on Indianapolis Gas's common stock. For twenty-two years thereafter Citizens Gas operated the mortgaged property and paid the interest on the bonds. In 1935, pursuant to its franchise, Citizens Gas conveyed its entire property, including that covered by its lease from Indianapolis Gas, to the City. But the City refused to regard itself bound by this lease. On March 2, *71 1936, the City and Indianapolis Gas agreed that, pending the settlement of the "presently existing controversy" between them as to whether the lease was valid and binding upon the City, the latter would deposit in escrow sums equal to the interest and dividend payments falling due. The agreement expressly provided that it was made without prejudice to either party's "position or rights."
Chase thereupon filed a bill of complaint in the District Court, naming as defendants Indianapolis Gas, Citizens Gas, and the City. It prayed that the lease from Indianapolis Gas to Citizens Gas be declared valid and binding upon the defendants, and as such be deemed part of the security for the performance of the mortgage obligations; that the City be ordered to perform all of the lessee's obligations in the lease and to pay directly to the plaintiff all of the interest payments as they shall become due; that judgment for overdue interest be entered against the defendants "liable therefor"; and that the plaintiff be awarded costs and attorneys' fees. The City and Citizens Gas specifically denied that the lease was valid and binding upon them; they alleged, further, that the controversy existed solely between Indianapolis Gas and the City, "citizens" of the same state. In its answer, Indianapolis Gas denied that it had "ever contended or admitted that the said ninety-nine year lease was not and is not a valid and binding obligation" upon the defendants.
Finding "no collision between the interests of the plaintiff and the interests of the Indianapolis Gas Company," the District Court realigned the latter as a party plaintiff, and finding identity of citizenship between some of the plaintiffs and the remaining defendants, dismissed the suit for want of jurisdiction. The Circuit Court of Appeals reversed, one judge dissenting, 96 F.2d 363, and certiorari was denied, 305 U.S. 600.
On remand to the District Court, Chase filed a supplemental bill alleging default as to interest payments falling *72 due and praying judgment against the defendants in the amount of the unpaid coupons. It alleged that "neither The Indianapolis Gas Company nor Citizens Gas Company, nor both of them, have property sufficient to pay the interest in default on the Bonds, other than the property now in the possession and under the control of the City of Indianapolis." This was admitted by Indianapolis Gas. The District Court held on the merits that the lease was not enforceable against either Citizens Gas or the City; that the former had no power under its franchise to bind the latter to the lease, and that by conveying the leased property to the City, Citizens Gas thereby discharged itself of its lessee obligations. Accordingly, the Court ordered that judgment be entered only against Indianapolis Gas for the amount of the unpaid interest.
Asserting that the District Court erred in not holding the lease valid and enforceable against the defendants, both Chase and Indianapolis Gas appealed. The Circuit Court of Appeals sustained their position and again reversed, 113 F.2d 217. The court held, further, that Chase was entitled to a judgment for unpaid interest against the parties in the following order of liability: the City, Citizens Gas, and Indianapolis Gas. We granted certiorari, 311 U.S. 636, because of the important jurisdictional issue involved in the litigation.
The facts leave no room for doubt that on the merits only one question permeates this litigation: Is the lease whereby Indianapolis Gas in 1913 conveyed all its gas plant property to Citizens Gas valid and binding upon the City? This is the "primary and controlling matter in dispute." The rest is window-dressing designed to satisfy the requirements of diversity jurisdiction. Everything else in the case is incidental to this dominating controversy, with respect to which Indianapolis Gas and the City, *73 "citizens" of the same state, are on opposite sides.[3] That the case presents "only one fundamental issue" and that that is the obligation of the City under the lease, Chase admits and indeed insists upon in its brief on the merits. Chase and Indianapolis Gas have always been united on this issue: both have always contended for the validity of the lease and the City's obligation under it. The opinion of the District Court lays bare the heart of this controversy:
"There can be no doubt that both plaintiff and the defendant, The Indianapolis Gas Company, have at all times asserted that the lease in question is valid and is binding upon the City, as Trustee. Neither is there any doubt as to their interest in sustaining the validity of such lease at the time of the institution of this action, prior hereto, and at all times subsequent thereto, and that many conferences have been held by and between them, through their attorneys, and many letters have passed between them relating *74 to this subject. . . . Later, when the parties [i.e., Indianapolis Gas and the City] were unable to adjust their differences and arrive at an agreement, it was decided by The Indianapolis Gas Company and the plaintiff that a suit should be instituted. The common stockholders of that company, of course, had a vital interest in the question of the validity of the lease because, if the lease is valid, they are assured of a six per cent return upon their stock for many years. If, however, a foreclosure suit should have been begun, or if the lease is invalid, no such return is assured. It was natural, therefore, that the Gas Company should take an active interest in the litigation and attempt to guide it along the course that would be most advantageous to it and to its stockholders."
Plainly, therefore, Chase and Indianapolis Gas are, colloquially speaking, partners in litigation. The property covered by the lease is now in the City's possession; Chase is simply acting to protect the bondholders' security. As to Indianapolis Gas, if the lease is upheld, it will continue to receive a six per cent return on its capital, and the burden of paying the interest on its bonded indebtedness will be not upon it but upon the City. What Chase wants, Indianapolis Gas wants, and the City does not want. Yet, the City and Indianapolis Gas were made to have a common interest against Chase when, as a matter of fact, the interests of the City and of Indianapolis Gas are opposed to one another. Therefore, if regard be had to the requirements of jurisdictional integrity, Indianapolis Gas and Chase are on the same side of the controversy not only for their own purposes but also for purposes of diversity jurisdiction. But such realignment places Indiana "citizens" on both sides of the litigation and precludes assumption of jurisdiction based upon diversity of citizenship. We are thus compelled to the conclusion that the *75 District Court was without jurisdiction.[4] And, of course, this Court, by its denial of certiorari when the case was here the first time, could not confer the jurisdiction which Congress has denied.
*76 This is not a sacrifice of justice to technicality. For the question here is not whether Chase and Indianapolis Gas may pursue what they conceive to be just claims against the City, but whether they may pursue them in the federal courts in Indiana, rather than in its state courts. The fact that Chase prefers the adjudication of its claims by the federal court is certainly no reason why we should deny the plain facts of the controversy and yield to illusive artifices. Settled restrictions against bringing local disputes into the federal courts cannot thus be circumvented.
These requirements, however technical seeming, must be viewed in the perspective of the constitutional limitations upon the judicial power of the federal courts,[5] and of the Judiciary Acts in defining the authority of the federal courts when they sit, in effect, as state courts. See Madisonville Traction Co. v. Mining Co., 196 U.S. 239, 255, and Ex parte Schollenberger, 96 U.S. 369, 377. The dominant note in the successive enactments of Congress relating to diversity jurisdiction, is one of jealous restriction, of avoiding offense to state sensitiveness, and of relieving the federal courts of the overwhelming burden of "business that intrinsically belongs to the state courts," in order to keep them free for their distinctive federal business. See Friendly, The Historic Basis of Diversity Jurisdiction, 41 Harv. L. Rev. 483, 510; Shamrock Oil Corp. v. Sheets, 313 U.S. 100, 108-09; Healy v. Ratta, 292 U.S. 263, 270. "The policy of the statute [conferring diversity jurisdiction upon the district courts] calls for its strict construction. The power reserved to the states, under the *77 Constitution, to provide for the determination of controversies in their courts may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution. . .. Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." Healy v. Ratta, supra, at 270. In defining the boundaries of diversity jurisdiction, this Court must be mindful of this guiding Congressional policy. See Hepburn & Dundas v. Ellzey, 2 Cranch 445; New Orleans v. Winter, 1 Wheat. 91; Morris v. Gilmer, 129 U.S. 315, 328-29; Coal Company v. Blatchford, 11 Wall. 172; Shamrock Oil Corp. v. Sheets, 313 U.S. 100; and compare Old Grant v. M'Kee, 1 Pet. 248; Elgin v. Marshall, 106 U.S. 578; Healy v. Ratta, 292 U.S. 263; McNutt v. General Motors Acceptance Corp., 298 U.S. 178.
Reversed.
MR. JUSTICE JACKSON:
The CHIEF JUSTICE, MR. JUSTICE ROBERTS, MR. JUSTICE REED and I are unable to concur in this disposition of these writs, in view of what we consider to be the controlling facts of this controversy.
Chase is trustee under a mortgage executed in 1902 by Indianapolis Gas to secure a bond issue. The mortgage covered a public utility gas plant and distribution system, together with after-acquired property, including intangibles.
In 1913, Indianapolis Gas turned the mortgaged utility system over to Citizens Gas, a competitor, under a lease for a term of ninety-nine years. Citizens Gas undertook, among other things, to pay the interest "as the same shall from time to time fall due" on the bonds secured by the mortgage, and also to pay certain sums, subject to some variation by reference to the price received for gas, to the stockholders of Indianapolis Gas. Citizens Gas unified *78 this leased plant with its own, and in 1935 conveyed to the City the entire property in conformity to statute which it is contended obligates the City to assume the obligations of the lease. The City took possession of the property but refused to accept the obligations of the lease. The City and Indianapolis Gas then agreed that, pending settlement of the controversy thus precipitated, sums payable under the lease as interest should be deposited in escrow, instead of being paid to Chase. Accordingly, there was default in the payment to the trustee of interest on the bonds.
For jurisdictional purposes, Indianapolis Gas, the mortgage debtor, and the City, whose possession of the property under the circumstances was alleged to result in an assumption of the debt, as well as Citizens Gas, the intermediate owner (which seems of no consequence to the issues under discussion), were all citizens of the State of Indiana, while Chase, the trustee, was a citizen of New York. Under these circumstances, Chase began an action in the federal District Court for the Southern District of Indiana, joining Indianapolis Gas, Citizens Gas, and the City as defendants. It asked that the interest of Indianapolis Gas in the lease be adjudged a part of its security for the performance of the mortgage obligations; that the lease be declared valid and binding upon all the defendants; that the City be ordered to pay directly to the trustee all of the interest payments as they fell due; that judgment for overdue interest be entered against the defendants liable therefor, including Indianapolis Gas; and that plaintiff be awarded costs and attorneys' fees.
This Court now destroys federal jurisdiction of the case by a transposition of parties, the radical nature of which appears most clearly from the judgments rendered below. It forces into the position of co-plaintiff one party which the District Court adjudged entitled to recover over a million dollars, and another which the District Court adjudged *79 solely liable to pay that sum. This same adversity was found by the Circuit Court of Appeals, which held the one entitled to receive, and the other obligated to pay, this sum with increase due to the lapse of time. It modified the judgment only by including two additional judgment debtors on whom it fixed primary and secondary liability, but continued the judgment against Indianapolis Gas with a tertiary liability for its satisfaction. The subtlety by which a judgment debtor is transfigured into a creditor for jurisdictional purposes deserves analysis, if for no other reason than because of its novelty.
The Court cannot resort to a decision of the merits of the case, over which it holds itself to be without jurisdiction, in order to justify its characterization of some of the trustee's claims as "window dressing" and "artifice." The measure of jurisdiction should be taken from the pleadings, unless the claims are frivolous on their face. That is not the case here. In ultimate effect, Chase alleged a cause of action and sought judgment against the City upon its personal undertaking to assume and pay the indebtedness upon the mortgage given by Indianapolis Gas to the plaintiff. It also alleged a cause of action and sought judgment against Indianapolis Gas for the amount of the coupon interest. Both demands were in excess of $3,000. If the plaintiff had asserted these demands in two separate actions, no one would doubt that both were within the jurisdiction of the District Court. In each, there is an adequate diversity of citizenship, and each involves the requisite jurisdictional amount, and each is "actual" and "substantial" enough to support the jurisdiction, if this means anything more than that a demand exceeding $3,000 must be involved. A United States District Court is not without jurisdiction to render a judgment exceeding $3,000 on confession if there is the requisite diversity of citizenship. Re Metropolitan Railway Receivership, 208 U.S. 90 at 108. The trustee's right to judgment against the mortgagor, *80 even though uncontested, is a matter of substance, for the judgment is the important  indeed indispensable  means of pursuing the mortgaged property into the hands of the City, in the event that it should turn out in the suit against the City that it had not become personally liable for any part of the mortgage debt.
Jurisdiction of the federal courts is indeed a variable and illusory thing, if the jurisdiction which a District Court admittedly has of two separate causes of action is lost when they are united in one, agreeably to the federal rules of procedure, because the one defendant as a surety seeks to enforce its equitable right to be exonerated by the other, who is alleged to be the principal debtor.
The doctrine of realignment permits and requires a nominal defendant to be treated as a plaintiff for the purpose of defining the real controversy, where no real cause of action is asserted against him by the plaintiff; but it does not admit of such treatment of a defendant against whom the plaintiff asserts a cause of action within the jurisdiction of the court. The plaintiff cannot rightly be deprived of the benefit of that jurisdiction, conferred upon him by laws enacted pursuant to the Constitution of the United States, because the court may think that such a cause of action is relatively less important than that asserted against another defendant, or because one action "dominates" the other, or because one is more "actual" or "substantial" than the other. The statute itself sets up the criterion of substantiality by fixing the jurisdictional amount at $3,000. Moreover, in this case, whether either of the rights asserted is more substantial than the other depends on the outcome of the litigation, which can hardly be used to determine jurisdiction which must exist at the beginning of the litigation.
If we examine this controversy in detail, it appears that the conflicts between the trustee and its mortgagor were *81 not feigned or merely formal. While the mortgage and the debt, which created the opposition inherent in the relation of mortgagor and mortgagee or between debtor and creditor, were undenied, Chase was asking that its lien be judicially construed to cover not merely the physical property described therein but also the entire interest of Indianapolis Gas in the lease, which required payments to stockholders over and above the interest payments for the bondholders. Furthermore, Chase asked the Court to set aside the escrow agreement by which Indianapolis and the City had assumed to exclude Chase from dominion over the escrow funds. Chase demanded that Indianapolis Gas be denied future control over such funds and that they be paid directly to itself. These were conflicts as to the extent of its interest in, and control over, any cause of action against the City. They existed between Chase and the defendant Indianapolis Gas, and concerned them alone.
There was also an issue as to the aggregate amount of the trustee's claim, which all defendants had a common interest in minimizing. The trustee claimed to be entitled to interest at 6%, after default, on coupons which bore a 5% interest rate, and it also claimed interest on overdue interest. This Court has held that where the only issue concerns the amount of the debt, as to which a mortgagor agrees with the plaintiff, but the issue is contested only by another mortgagor who has assumed the entire mortgage debt, the mortgage and the debt are the real subject matter of the controversy; that the decree when the amount is ascertained must run against all debtors; and that the uncontesting mortgagor is a necessary party on the side opposite the mortgagee. Ayres v. Wiswall, 112 U.S. 187.
There were other issues on which the defendants were in sharp conflict between themselves. Indianapolis Gas *82 and Chase both served their respective interests by contending against the City that its acts had the legal effect of binding it to the terms of the lease. But their common attitude in relation to this issue sprang from different legal origins. The rights of Chase had their source and their measure in the mortgage. The mortgage might or might not, depending upon the outcome of the litigation, be construed to give Chase a right to enforce for its own benefit the lease terms as against the City. Indianapolis Gas, on the other hand, derived no rights against the City from that instrument and was not, like Chase, limited by it. Indianapolis Gas's rights had no other measure than that found in the terms of the lease itself.
We would be diligent, no less than the majority, to prevent imposition on the jurisdiction of the federal courts by means of "window dressing" or "artifice." We find in this case nothing that warrants either characterization, and we think that the precedents invoked to support today's action reveal the gap which divides the doctrine of realignment, as heretofore applied by this Court, from the application made of it today.
The majority opinion leans heavily on Dawson v. Columbia Trust Co., 197 U.S. 178. Mr. Justice Holmes in that case said: ". . . it is obvious that the Water Works Company is on the plaintiff's side and was made a defendant solely for the purpose of reopening in the United States Court a controversy which had been decided against it in the courts of the State." And he said again: ". . . when the arrangement of the parties is merely a contrivance between friends for the purpose of founding a jurisdiction which otherwise would not exist, the device cannot be allowed to succeed." And so say we. But there is not the slightest indication of this kind of connivance in the case before us.
In Helm v. Zarecor, 222 U.S. 32, this Court refused to align with the plaintiffs a corporation although its board *83 and officers were in entire agreement with the position of complainants on the merits of the case. Another of the cases invoked is Niles-Bement Co. v. Iron Moulders Union, 254 U.S. 77. Here a New Jersey corporation sought to break a strike by filing a bill in an Ohio District Court against labor unions, individual strikers, and an Ohio corporation, all citizens of Ohio. The New Jersey plaintiff owned a controlling interest in the Ohio defendant, the two had common officers and directors, and no relief whatever was asked against the Ohio company, which the bill alleged was being delayed in delivery of goods because of the strike. The Court refused to allow such an imposition on its jurisdiction. In Sutton v. English, 246 U.S. 199, this Court held it to be error to align one of the defendants with the plaintiff for jurisdictional purposes where her interest was adverse to plaintiff on one out of four issues, although with plaintiff as to three of the four.
We take the statement in the opinion of the Court, that its basis is "not in legal learning but in the realities of the record," to be another way of saying that it disagrees with the lower court's view of the facts rather than with its view of the law. Review of facts is not the conventional function of this Court, and resort to it at this stage of this litigation is somewhat less than fair to the courts below as well as to the litigants.
Three years ago this Court refused to review the decision of the Circuit Court of Appeals that this controversy was within the federal jurisdiction. Indianapolis v. Chase National Bank, 305 U.S. 600. Of course, a denial of certiorari is not to be taken as a ruling on the merits of any question presented. However, where the case is again brought here after some years of litigation, jurisdiction ought not to be overturned on light or inconsequential grounds, or on disagreements with the court below on matters of fact. To do so here is likely to result in further and, as we see it, needless delay in settling the status of *84 an important utility and the obligations and rights of a populous municipality. We think it the duty of the Court to end this controversy by proceeding to judgment on the merits, and that nothing in this record justifies ousting these parties from the federal courts. If, as the opinion intimates, the forefathers are thought to have been unwise in creating a federal jurisdiction based on diversity of citizenship, we should think the remedy of those so minded would be found in Congressional withdrawal of such jurisdiction, rather than in the confusing process of judicial constriction.
We would follow the words of the jurisdictional statute when it is sought to restrict its application, quite as faithfully as when the effort is to enlarge it by recourse to doctrines which conflict with its words. Compare Healy v. Ratta, 292 U.S. 263, 270.
NOTES
[*] Page 63 Together with No. 12, Chase National Bank, Trustee, v. Citizens Gas Co. et al.; and No. 13, Chase National Bank, Trustee, v. Indianapolis Gas Co. et al., also on writs of certiorari to the Circuit Court of Appeals for the Seventh Circuit.
[1] E.g., Pittsburgh, C. & St. L. Ry. Co. v. Baltimore & Ohio R. Co., 61 F. 705; Cilley v. Patten, 62 F. 498; Board of Trustees v. Blair, 70 F. 414; Allen-West Commission Co. v. Brashear, 176 F. 119; Lindauer v. Compania Palomas, 247 F. 428; DeGraffenreid v. Yount-Lee Oil Co., 30 F.2d 574.
[2] In addition to the cases cited in the text, see Removal Cases, 100 U.S. 457, 468-70; Pacific R. Co. v. Ketchum, 101 U.S. 289, 298-99; Corbin v. Van Brunt, 105 U.S. 579; Evers v. Watson, 156 U.S. 527, 532; Doctor v. Harrington, 196 U.S. 579; Venner v. Great Northern Ry. Co., 209 U.S. 24; Steele v. Culver, 211 U.S. 26, 29; Lee v. Lehigh Valley Coal Co., 267 U.S. 542; Sutton v. English, 246 U.S. 199.
[3] It is contended that, notwithstanding their indissoluble bond on the controlling issue, there are "sufficient matters in controversy" between Chase and Indianapolis Gas to preclude their alignment on the same side. Chase, of course, did not bring this suit in order to obtain a declaration that, regardless of the validity of the lease, Indianapolis Gas is still ultimately responsible for the interest payments on its bonded indebtedness. That was not really in issue, and by its answer, Indianapolis Gas took it out of the case. The further argument is made that, by entering into the escrow agreement with the City, Indianapolis Gas has asserted a claim to the interest payments adverse to that of Chase and the bondholders. But the facts are against this contention. The agreement deals merely with the disposition of the interest falling due during the pendency of the litigation. Moreover, the lease between Indianapolis Gas and Citizens Gas contains no provisions requiring payment of the interest direct to Chase or the bondholders. Nor can diversity jurisdiction be rested upon so flimsy a basis as Chase's prayer for reimbursement of costs and attorneys' fees. The tail flies with the kite.
[4] Compare Dawson v. Columbia Trust Co., 197 U.S. 178, a suit by a Pennsylvania mortgagee of a Georgia waterworks company to restrain a Georgia city from building a new waterworks and to compel specific performance of the city's contract with the waterworks company. The latter was joined as a defendant, on the theory that it was a party to the contract sought to be enforced. The Court held that the bill should be dismissed for lack of jurisdiction: ". . . the court will look beyond the pleadings and arrange the parties according to their sides in the dispute. When that is done it is obvious that the Water Works Company is on the plaintiff's side." 197 U.S. at 180. Ayres v. Wiswall, 112 U.S. 187, and Coney v. Winchell, 116 U.S. 227, are not applicable here. They hold merely that in a foreclosure suit the mortgagee may join the mortgagor and his assignee as defendants; they did not involve any controversy between the mortgagor and the "assignee" as to whether the assignment is binding upon the latter.

Sutton v. English, 246 U.S. 199, clearly holds that the parties must be aligned according to their "attitude towards the actual and substantial controversy." 246 U.S. at 204. The plaintiffs, who included all of the heirs of Mary Jane except Cora, sought to establish their right to certain property claimed to have belonged to Mary Jane. The claimants could not recover unless they proved that a residuary bequest to Cora was invalid  and, with respect to this issue, their position was completely adverse to Cora's. "But, as already pointed out, even could complainants succeed in showing that Mary Jane Hubbard at the time of her death was entitled to the community property, her will giving all the residue of her property to Cora D. Spencer still stands in the way of their succeeding to it as heirs-at-law, and hence their prayer to have that will annulled with respect to the residuary clause is essential to their right to any relief in the suit." 246 U.S. at 207. If the plaintiffs prevailed on this issue of the validity of the residuary gift to Cora, their interests and hers would then be the same with respect to the remaining issues in the case. But the Court held that in relation to the "actual and substantial controversy," Cora and the plaintiffs were on opposite sides, thereby sustaining diversity jurisdiction. In Sutton v. English, alignment of the parties with respect to their real interests sustained diversity; such alignment here precludes jurisdiction. That case and this are applications of the same principle.
[5] Cf. Strawbridge v. Curtiss, 3 Cranch 267; California v. Southern Pacific Co., 157 U.S. 229, 261; Treinies v. Sunshine Mining Co., 308 U.S. 66, 71.