**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, Appellant,**

v.

**The FIRST NATIONAL BANK AT WINTER PARK, FLORIDA et al.,**
**Appellees.**

**No. 21171.**

United States Court of Appeals
Fifth Circuit.

Sept. 21, 1965.

---

Florida, in January 1962, with an initial deposit of $500 in currency.

On February 6, 1962, there came into The Sanford Atlantic National Bank, of Sanford, Florida, a messenger whose identity was then undisclosed but who was later ascertained to be Aaron Sipes, with an envelope directed to the exchange teller of the bank. In the envelope was a check drawn on the bank bearing the purported signature of H. E. Tooke, Jr., a customer of the bank, in the amount of $25,000. The envelope also contained a letter requesting that the check be exchanged for five cashier's checks, to be delivered "to bearer," and payable as follows:

| | |
|---|---|
| John A. Eick, Sanford, Florida | $6,132.44 |
| Albert N. Fitts, Sanford, Florida | 6,132.44 |
| Robert Mitchell, Winter Park, Florida | 3,867.56 |
| Lewis Mitchell, Winter Park, Florida | 3,867.56 |
| R. T. Overstreet, Orlando, Florida | 5,000.00 |

There were persons named John A. Eick, Albert N. Fitts and R. T. Overstreet who were, and were known by the officers of the bank to be persons of substance and prominence in the places designated as their residences. The messenger, in response to a question from the teller, said he had been sent to the bank, not by Mr. Tooke but by "Dr. Wilkins, down at the hospital."

The exchange teller of Sanford Atlantic took the check to the cashier, R. W. Dean, and he in turn conferred with the executive vice president. No comparison was made of the purported signature on the check with the Tooke signature card or with any other known signature of his. Although the final "e" of the Tooke name was omitted from the check signature, the two officers agreed that the Tooke signature was genuine. However, the cashier apparently had some suspicion and thought he had better telephone Tooke. He called Tooke's home and was informed that Tooke was away until late in the afternoon. The cashier's

Monroe E. McDonald, Orlando, Fla., Sanders, McEwan, Schwarz & Mims, Orlando, Fla., for appellant.

J. R. Wells, Donald T. Senterfitt, of Akerman, Senterfitt, Eidson, Mesmer & Robinson, Robert Dyer, Orlando, Fla., for appellees.

Before JONES and GEWIN, Circuit Judges, and ESTES, District Judge.

JONES, Circuit Judge.

A man who introduced himself as R. L. Mitchell opened a checking account with The First National Bank at Winter Park,

checks were issued, taken by the messenger, and delivered to the person who had represented himself to be Dr. Wilkins. The check which had been signed in the name of Tooke was charged to his account. A week passed before Sanford Atlantic learned that it had paid a forgery. Dean assumed that the cashier's checks with Eick, Fitts and Overstreet as the named payees were intended for the persons of those names who were known to him but he readily admitted that he would have issued these checks in names without significance to him as was done in the case of the two checks issued in the Mitchell names.

A few days after opening his account in the Winter Park Bank, Mitchell, so called, who may or may not have been the same person as the "Dr. Wilkins at the hospital," presented the cashier's checks made in the names of Eick, Fitts, Overstreet and Lewis Mitchell, all bearing purported endorsements of the payees as named, at the Winter Park bank. An endorsement in the name of R. L. Mitchell was also on each of the checks.

The Winter Park bank gave Mitchell cash and its cashier's checks for the Sanford Atlantic cashier's checks. Winter Park's cashier's checks were subsequently cleared through other banks and were paid by it. The Sanford Atlantic cashier's check made payable to Robert Mitchell was cashed at the Daytona Beach Atlantic National Bank and honored by Sanford Atlantic. This check is not a part of the subject matter of this controversy. When the other four cashier's checks were presented to Sanford Atlantic it refused payment upon the ground of "First Indorsement Forged."

The Indemnity Insurance Company, a Pennsylvania Corporation, the appellant here and the plaintiff in the district court, brought an action against the Winter Park and Sanford Atlantic banks, both having their principal places of business in Florida, under the Federal Declaratory Judgments Act,[1] and Rule 57, Fed.Rules Civ.Proc., 28 U.S.C.A. Jurisdiction was based on diversity of citizenship. The comp'aint alleged that Indemnity had issued to the Winter Park bank a bankers blanket bond with a clause[2] providing insurance against losses by forgery. In its complaint, where the facts as herein recited were pleaded, Indemnity alleged that the Winter Park bank had made an informal

1. "In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. * * *" 28 U.S.C.A. § 2201.

2. "Any loss through Forgery or Alteration of, on or in any checks, drafts, acceptances, withdrawal orders or receipts for the withdrawal of funds or Property certificates of deposit, letters, of credit, warrants, money orders or orders upon public treasuries; or any loss (1) through transferring, paying or delivering any funds or Property or establishing any credit or giving any value on the faith of any written instructions or advices directed to the Insured and authorizing or acknowledging the transfer, payment, delivery or receipt of funds or Property, which instructions or advices purport to have been signed or indorsed by any customer of the Insured or by any banking institu-

tion but which instructions or advices either bear the forged signature or indorsement or have been altered without the knowledge and consent of such customer or banking institution, or (2) through the payment by the Insured of promissory notes which are payable at the Insured or which are or purport to be notes payable at the Insured under instructions of any depositor thereof, and which are actually paid by the Insured out of funds on deposit with it, and which prove to be forged or altered or which bear forged indorsements.
"Any check or draft (a) made payable to a fictitious payee and indorsed in the name of such fictitious payee or (b) procured in a face to face transaction with the maker or drawer thereof or with one acting as agent of such maker or drawer by anyone impersonating another and made or drawn payable to the one so impersonated and indorsed by anyone other than the one impersonated, shall be deemed to be forged as to such indorsement."

522

claim for indemnity as to the four cashier's checks which it had cashed. It was said in the complaint that Indemnity took the position that its insured had not sustained "a loss compensable under the policy as yet because Sanford could not lawfully refuse to honor its own cashier's checks held in due course by" the Winter Park bank, there being no "forgery," and if there were forgeries, Sanford Atlantic was precluded by its negligence "from asserting such defense." It was then stated that the Winter Park bank took the position that it had sustained a loss, that it was under "no obligation to bring legal action" against Sanford Atlantic, and that Sanford Atlantic's negligence is immaterial. Indemnity went on in its complaint to assert facts which it contended amounted to such negligence of Sanford Atlantic as estopped it from refusing to honor its cashier's checks. It was there alleged that under the Florida statutes[3] the checks were payable to the order of fictitious payees, and hence payable to bearer, and such fact was known to the agent who supplied the names of the payees, and hence Sanford Atlantic was bound to honor the cashier's checks on presentation. Indemnity expressed its doubts as to its liability to its insured; as to the legal liability of Sanford Atlantic to the Winter Park bank, and its rights against Sanford Atlantic in case it is required to indemnify the Winter Park bank. A determination of the liabilities of the parties and a decree as required by equity, justice and the law were sought by the prayer.

■ The Winter Park bank answered asserting that if there were forged indorsements Indemnity was liable to it for its loss. It counterclaimed against Indemnity and cross-claimed against Sanford Atlantic. An answer to the complaint was filed by Sanford Atlantic and, by a separate pleading, it answered the cross-claim of the Winter Park bank. In both of its pleadings Sanford Atlantic set

out that the two banks were Florida residents and that the Winter Park bank and Indemnity should be aligned on the same side and when so aligned the court was without jurisdiction. If this jurisdictional question was passed upon by the district court, its order was not included in the record on appeal. The question is not mentioned in the district court's findings and conclusions, nor is it discussed in the extended briefs which have been filed. Since the question is one of jurisdiction it is our duty, as well as the duty of the district court, to notice the jurisdictional question and determine whether there is an actual, substantial controversy between citizens of different states, all of whom on one side are citizens of different states from all parties on the other side. Whether there is such a controversy is to be ascertained from the principal purpose of the suit and the primary and controlling matter in dispute. City of Indianapolis v. Chase National Bank, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47.

The purpose of the action was to have a determination as to whether Eick, Fitts and Overstreet were fictitious payees so that the cashier's checks naming them became payable to bearer under the Negotiable Instruments law with the loss falling upon Sanford Atlantic, or whether these checks were payable to specified known individuals whose endorsements were forged, with the loss falling upon the Winter Park bank and Indemnity, its insurer against loss by forgery. We are unable to find any substantial difference between the positions of the Winter Park bank and Indemnity. The only contention made by Indemnity as to a controversy with its insured, the Winter Park bank was that the bank had not sustained a loss as of the date of the trial against which the policy insured. Restating this contention of Indemnity, it urges it would not be liable on the policy until its insured's loss had been established. This issue was not only one of the issues but

3. "The instrument is payable to bearer:
\* \* \* \* \* \* \* \*
(3) When it is payable to the order of a fictitious or nonexisting person, and such

fact was known to the person making it so payable or known to his employee, or other agent who supplies a name of such payee; \* \* \*." F.S.A. § 674.11.

the primary issue which Indemnity sought to have decided in its action against the two banks.

We see no bona fide controversy between Indemnity and the Winter Park bank. The purpose of the action was to secure a declaratory judgment that the loss resulting from the fraudulent scheme fell on Sanford Atlantic rather than upon the Winter Park bank, with consequent immunity of Indemnity. Realignment of the parties results in an absence of Federal jurisdiction. State Farm Mutual Automobile Insurance Co. v. Hugee, 4th Cir. 1940, 115 F.2d 298, 132 A.L.R. 188; Fireman's Fund Insurance Co. v. Dunlap, 4th Cir. 1963, 317 F.2d 443; Alexander v. Washington, 5th Cir. 1960, 274 F.2d 349. Since the absence of diversity jurisdiction appears, and no other ground of Federal jurisdiction is shown, it follows that the judgment of the district court should be vacated and the cause remanded with directions to dismiss the action for want of jurisdiction.

Vacated and remanded.