JAMES RIVER INSURANCE COMPA-
NY, an Ohio corporation, Plaintiff,

v.

ARLINGTON PEBBLE CREEK, LLC,
an Alabama limited liability company;
Arlington Properties, Inc., an Ala-
bama Corporation; and Campus Edge
Condominium Association, Inc., a
Florida Corporation, Defendants.

Case No. 1:13cv224–MW/GRJ.

United States District Court,
N.D. Florida,
Gainesville Division.

Signed July 30, 2015.

Sina Bahadoran, Hinshaw & Culbertson, LLP, Coral Gables, FL, for Plaintiff.

James Arthur Bolling, Jr., Jonathan Russell Huffman, Lanny Russell, Smith Hulsey & Busey, Jacksonville, FL, Mark Andrew Boyle, Sr., Boyle Gentile Leonard etc, PA, Fort Myers, FL, Jefferson M. Braswell, Scruggs & Carmichael, PA, Gainesville, FL, for Defendants.

## ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND

MARK E. WALKER, District Judge.

In this coverage action, Defendants assert that one of them should be realigned with Plaintiff, that this destroys complete diversity, and as a result the complaint must be dismissed for lack of subject-matter jurisdiction. This Court concludes that the parties are properly aligned. But the complaint is facially defective, so this order dismisses the complaint and grants leave for Plaintiff to file an amended complaint.

### I

The necessary background facts are not complicated. Plaintiff James River Insurance Company ("James River") is an Ohio corporation with its principal place of business in Virginia. It filed its initial complaint against Defendants Arlington Properties, Inc. ("Arlington"), an Alabama corporation, and Arlington Pebble Creek, LLC ("APC"), an Alabama limited liability company. ECF No. 1. The initial complaint had ten counts seeking a declaration that James River does not have a duty to defend or indemnify Arlington and APC for claims brought by Campus Edge Condominium Association, LLC, a Florida corporation, in an underlying lawsuit.

The basic allegations of the underlying suit are these. Around November 2005, Arlington began considering the purchase of an apartment complex. ECF No. 21–1 ¶ 9. On January 31, 2006, Arlington, as managing member, formed APC as a LLC. ECF No. 21–1 ¶ 18. A week later, APC took title to the apartment complex. *Id.* ¶ 18. APC eventually converted the apartments into condominiums and created Campus Edge. *Id.* ¶ 27. The condominium owners took control of Campus Edge in 2008. *Id.* ¶ 13.

The underlying complaint asserts that Arlington inspected the property before the purchase, learned of certain defects, and used APC to mislead or defraud Campus Edge. Sometime after transfer of control, Campus Edge discovered the deficiencies.

Campus Edge brought multiple claims in state court against APC and Arlington. ECF No. 21–1. In the now fourth amended complaint, Count I is against APC for concealment of structural defects in violation of § 718.616, Florida Statutes. Counts II and III are fraudulent non-disclosure claims against Arlington and APC, respectively. Counts IV and V are negligent-misrepresentation claims against Arlington and APC, respectively. Count VIII is a breach-of-warranty claim against APC alone.[1]

James River is involved because it issued a commercial general liability insurance policy, effective from November 1, 2005, through November 1, 2006, which listed Arlington as an insured. APC and "the location of the condominium, 2360 Southwest Archer Road, Gainesville, Florida 32608," were later added to the policy. ECF No. 21 ¶ 28.

In this action James River alleges that the insurance policy does not cover the damages alleged in Campus Edge's underlying suit against Arlington and APC. The reasons why James River asserts it is off the hook are numerous and need not be described in detail now. It is enough to highlight two of those reasons. First, James River alleges that because of an exclusion there is no coverage "to the extent that any 'property damage' was expected or intended from the standpoint of Arlington." ECF No. 21 ¶ 43–45. Second, James River asserts that another exclusion "precludes coverage to the extent the complaint alleges claims arising out of dishon-est, fraudulent, criminal, or malicious acts or omissions of Arlington, its employees or any person for whom Arlington is legally responsible." Id. ¶¶ 69–71.

Arlington and APC filed a motion to dismiss the first amended complaint for failure to join Campus Edge as an indispensable party. ECF No. 17. James River then filed a second amended complaint naming Campus Edge as an additional Defendant. ECF No. 21.

Campus Edge answered the second amended complaint with numerous denials. See ECF No. 34. For example, of the ten counts in James River's complaint (excepting those allegations previously admitted and incorporated by reference), ECF No. 21 ¶¶ 43–80, Campus Edge denied everything. See ECF No. 34 ¶¶ 43–80. Notably, though, Campus Edge agreed with James River's allegations that APC provided a false and misleading budget to APC before transferring control and that APC "expected or intended that Campus Edge would rely on those statements, which resulted in damages to Campus Edge and its members." ECF No. 21 ¶¶ 22–23; ECF No. 34 ¶¶ 22–23. Campus Edge also raised fifteen affirmative defenses. ECF No. 34. For example, the sixth defense asserts that the allegations of breach of statutory duty, negligent misrepresentation, and breach of warranty "should be covered by the policy" because they "are independent and do not rely upon the deliberate or fraudulent acts of the Defendant." ECF No. 34, at 7.

With that background in mind, this Court will now consider whether it has subject-matter jurisdiction.

## II

Federal courts have limited jurisdiction. District courts have original juris-

---

1. Counts VI and VII are against the company that inspected the apartment complex.

diction over civil actions meeting the amount in controversy requirement which are between "citizens of different states." 28 U.S.C. § 1332(a)(1). The requirement for complete diversity of citizenship means that no plaintiff may be a citizen of the same state as any defendant. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

Subject-matter jurisdiction challenges may be facial or factual. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir.1990). For a factual challenge, this Court need not accept the allegations in the complaint as true, and it may consider statements beyond the pleadings such as testimony and affidavits. *Id.*

Arlington and APC raise a two-part factual challenge to subject-matter jurisdiction. First, they say that as a limited-liability company that adopts the citizenship of its members, APC is a citizen of Florida. Second, they argue that the newly joined Defendant, Campus Edge, a Florida corporation, is properly aligned with Plaintiff, James River. The result of that alignment would be citizens of Florida on both sides of the case. With complete diversity so destroyed, the complaint would have to be dismissed. Campus Edge has filed a notice adopting the position of Arlington and APC. ECF No. 42. But Campus Edge has not sought to change its answer.

For the following reasons, this Court reaches two conclusions. Assuming that APC is a citizen of Florida, the parties are properly aligned as they are. The complaint, however, is still dismissed for not adequately alleging the citizenship of APC.

## A

The first issue is the citizenship of APC. In its complaint, James River alleges that all members of the limited liability company, APC, were residents of Alabama. ECF No. 21 ¶ 6. Defendants offer some evidence that two of the four members of APC are residents of Florida. ECF No. 40, at 13. The focus on residency misses the mark.

"[A] limited liability company is a citizen of any state of which a member of the company is a *citizen*." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1022 (11th Cir.2004) (emphasis added). For either a natural person or an entity, the allegation of residency alone is insufficient. *See Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1267, 1269 (11th Cir.2013) (explaining such a complaint is "fatally defective" as citizenship is equivalent to domicile, which is both residence and an intention to remain indefinitely); 28 U.S.C. § 1332(c)(1) (establishing corporate citizenship for diversity purposes).

This Court concludes below that the parties are properly aligned. So even if it turns out that APC's members are citizens of Florida, this would not destroy complete diversity. But James River still has the burden of establishing diversity jurisdiction. Because it does not adequately allege the citizenship of the LLC members, the complaint must be dismissed for lack of jurisdiction. *See* Fed.R.Civ.P. 12(h)(3). James River may file an amended complaint properly alleging the citizenship of those members.

## B

The second issue is the proper alignment of the parties for the purpose of ensuring complete diversity. Defendants say that Campus Edge, a citizen of Florida, should be realigned with Plaintiff James River. This Court concludes that the parties are properly aligned as they are.

Before drilling into the details, some preliminary observations are appropriate.

Diversity is not judged "by simply looking at which parties fall on which side of the 'v.'" *Hedge Capital Investments Ltd. v. Sustainable Growth Grp. Holdings LLC,* 593 Fed.Appx. 937, 941 (11th Cir.2014). More is required.

■ A federal court's task is to "work out the relation of each party to the suit according to the nature of his real interest." *See Peters v. Standard Oil.Co.,* 174 F.2d 162, 163 (5th Cir.1949). If the parties' interests are the same, they will be aligned together, even if the parties' interests "were in opposition outside of the issues raised in the subject action." *City of Vestavia Hills v. Gen. Fid. Ins. Co.,* 676 F.3d 1310, 1314 (11th Cir.2012).

This is a "particularly difficult" assessment for a district court to make. *United States Fidelity and Guar. Co. v. Algernon–Blair, Inc.,* 705 F.Supp. 1507, 1511 (M.D.Ala.1988). That is because the court "must critically assess the substance of the alleged controversy to determine the goals and interests of each party. Given the early stage at which this must be done and the undeveloped factual field, experienced judges may well draw different conclusions from the same situation." *Id.* at 1513. Although jurisdiction must be based on facts as they existed at the time of the complaint, those facts may later be revealed in the pleadings and other papers. *Am. Motorists Ins. Co. v. Trane Co.,* 657 F.2d 146, 151 n. 3 (7th Cir.1981).

The starting point for the analysis is the leading case on realignment for diversity-jurisdiction purposes, *City of Indianapolis v. Chase National Bank of City of New York,* 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941). Writing for the Supreme Court, Justice Frankfurter stated the relevant law:

The specific question is this: Does an alignment of the parties in relation to their real interests in the matter in controversy satisfy the settled requirements of diversity jurisdiction?

As is true of many problems in the law, the answer is to be found not in legal learning but in the realities of the record. Though variously expressed in the decisions, the governing principles are clear. To sustain diversity jurisdiction there must exist an actual, substantial, controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side. Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is our duty, as it is that of the lower federal courts, to look beyond the pleadings, and arrange the parties according to their sides in the dispute. Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary collision of interest exists is therefore not to be determined by mechanical rules. It must be ascertained from the principal purpose of the suit and the primary and controlling matter in dispute.

*Id.* at 69–70, 62 S.Ct. 15 (internal quotations marks and citations omitted). To complicate matters, "courts applying the *Indianapolis* standard have focused on different phrases of the above-quoted passage, and as a result different tests have evolved." *Maryland Cas. Co. v. W.R. Grace and Co.,* 23 F.3d 617, 622 (2d Cir. 1993).

■ Under the primary dispute test, the parties must be "aligned in accordance with the primary dispute in the controversy, even where a different, legitimate dispute between the parties supports the original alignment." *U.S. Fid. & Guar. Co. v. Thomas Solvent Co.,* 955 F.2d 1085, 1089 (6th Cir.1992); *see also Employers Insurance of Wausau v. Crown Cork and Seal Company, Inc.,* 905 F.2d 42 (3rd Cir.

1990) (same); *Continental Airlines v. Goodyear Tire and Rubber Co.*, 819 F.2d 1519 (9th Cir.1987) (same); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173 (5th Cir. 1984) (same). A criticism is that the primary dispute test requires a case be "distilled to its single-issue essence for realignment purposes." *Maryland Cas. Co.*, 23 F.3d at 622. The concern is that the Supreme Court did not intend in Indianapolis that all cases be "forced into a single-posture case." *Id.* And as the Indianapolis majority characterized the facts, it was a single-issue case without "sufficient matters in controversy" to "preclude aligning certain parties on a certain side." 314 U.S. at 74, 62 S.Ct. 15; id. at 73 n. 3, 62 S.Ct. 15; *but see id.* at 78, 62 S.Ct. 15 (Jackson, J., dissenting) (rejecting the conclusion that a claim that resulted in a million-dollar judgment is insubstantial and questioning the wisdom of a court realigning a party and then dismissing a case because a claim meeting jurisdictional requirements is "relatively less important" than another in the case).

In contrast, several circuits have drawn a "collision-of-interest" test from *Indianapolis* and the cases it relied upon. *Maryland Cas. Co.*, 23 F.3d at 622. Although this still requires the existence of "an actual substantial controversy," the "conflict may in some cases concern an issue other than the so-called primary issue in dispute." *Id.* Under that test, a defendant's realignment is not required "unless the conflict with the original plaintiff was not actual and substantial." *Fid. & Deposit Co. of Maryland v. City of Sheboygan Falls*, 713 F.2d 1261, 1268 (7th Cir.1983) (Posner, J.); *Maryland Cas. Co.*, 23 F.3d at 622 (same); *Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1388 (10th Cir.1978) (same); *Universal Underwriters Ins. Co. v. Wagner*, 367 F.2d 866, 871 (8th Cir.1966) (same). It thus favors the original alignment of the parties over an assessment of the primary purpose of the suit.

■ In substance, the Eleventh Circuit appears to follow the primary dispute test.[2] *See Weller v. Navigator Marine, Inc.*, 737 F.2d 1547, 1549 (11th Cir.1984); *Indemnity Ins. Co. of North America v. First Nat'l Bank at Winter Park, Fla.*, 351 F.2d 519, 521 (5th Cir.1965); *Alexander v. Washington*, 274 F.2d 349, 351 (5th Cir. 1960); *Thomas v. Thomas*, 165 F.2d 332, 333–34 (5th Cir.1947).[3] That is, the court

---

2. Some district courts within this circuit disagree over which test governs. *Compare Larios v. Perdue*, 306 F.Supp.2d 1190, 1195 (N.D.Ga.2003) ("[T]he Eleventh Circuit has applied the substantial controversy test in adjudicating a realignment motion in a diversity case."), *with Fed. Ins. Co. v. Bill Harbert Const. Co.*, 82 F.Supp.2d 1331, 1337 (S.D.Ala. 1999) (concluding that two circuit precedents reflect the principal dispute test).

3. In each of those cases (and just as the other circuits applying the primary dispute test have done) this circuit has rejected as insufficient some sort of contingent adversity. Sometimes the adversity was not at issue in the suit. *See, e.g., Weller*, 737 F.2d at 1548 (two defendants could sue plaintiff if plaintiff lost); *Alexander*, 274 F.2d at 351 (defendant to be realigned might have to return to other defendants consideration under theory of un-

just enrichment). The court concluded in those cases that a possible adversity not before the court did not preclude aligning such a defendant having a substantially identical position on the issue before the court. Under such circumstances, there is simply not a substantial controversy between the parties necessary to keep them on opposite sides. *See also Vestavia Hills*, 676 F.3d at 1314 (possibility of corporation having to satisfy judgment itself if insurer not liable was not before the court). But sometimes the secondary issue *was* before the court. *See, e.g., Indemnity Ins.*, 351 F.2d at 522 (holding that where bank agreed that another bank was liable loss, but if not, insurance company was liable for loss, this was not a "bona fide controversy"); *Thomas*, 165 F.2d at 333–34 (if allegedly fraudulent deed was nullified then defendant would be adverse as to the partition of property). If the secondary dis-

must arrange the parties according to "the principle purpose of the suit and the primary and controlling matter in dispute." *Vestavia Hills,* 676 F.3d at 1315.[4] Even so, the principle purpose of the suit and the primary and controlling matter in dispute may be ascertained at a level of generality which allows parties to agree and disagree where there are multiple factual or legal issues, without necessarily requiring realignment. *See Texas Pacific Coal & Oil Co. v. Mayfield,* 152 F.2d 956, 957 (5th Cir.1946) (holding realignment was not required in a quiet title action where defendant agreed with plaintiff on some points and disagreed on others).

In this sort of case "it makes some sense to look to the broad, general issue of coverage rather than to the specific matters upon which that issue turns." *Cromwell v. Admiral Ins. Co.,* No. CIV.A. 11–0155–CG–N, 2011 WL 2670098, at *5 (S.D.Ala. June 21, 2011), *report and recommendation adopted,* 2011 WL 2689356 (S.D.Ala. July 7, 2011). That is consistent with the Eleventh Circuit's remark that the "normal alignment of parties in a suit seeking a declaratory judgment of non-coverage is Insurer versus Insured and Injured Party." *Vestavia Hills,* 676 F.3d at 1314 (citing *Home Ins. Co. of Ill. v. Adco Oil Co.,* 154 F.3d 739, 741 (7th Cir.1998)).

Defendants say that the normal alignment in a suit like this one does not reflect the true interests of the parties. They say that Campus Edge's interest is aligned with James River against Arlington and APC. They suggest that Campus Edge seeks to prove the same key facts as James River, which would substantially diminish or eliminate coverage. They assert that Campus Edge is "undoubtedly far more interested in proving the fraud and other willful malfeasance it believes will pierce APC's corporate veil—allowing Campus Edge to advance supposed multi-million-dollar claims with punitive damages enhancements against a solvent entity (Arlington)—than it is in proving more straight-forward negligence claims against the actual developer of the Complex, APC, in the hopes of obtaining the $1 million

pute is before the court, the rule appears to be that the primary and controlling matter in dispute is "the first of the alternative positions (that is, the alternative which is unconditional) to be resolved." *See Butcher & Singer, Inc. v. Kellam,* 623 F.Supp. 418, 424 (D.Del. 1985).

4. To be sure, in a case soon after *Indianapolis* the former Fifth Circuit spoke in terms very similar to the collision-of-interests test. But on close inspection it is clear the court was not adopting that analysis. In *Thomas v. Thomas,* 165 F.2d 332 (5th Cir.1947), a separation decree granted equal shares of property to former spouses. The plaintiff asserted that deeds by her former husband conveying that real property as well as some of her separate property were void, and also sought partition. The plaintiff herself had also conveyed interests to one of the defendants, Lawrence. The other defendants (recipients of the husband's deed) moved to dismiss asserting that Lawrence should be aligned with the plaintiff (as they both sought to nullify the deed) and this would destroy complete diversity. The court held that "the realignment cannot take place until it has been made to appear that there is no substantial controversy between the plaintiff and the defendant proposed for realignment or that their rights are so identical as to necessitate their being placed on the same side." *Id.* at 334. But this was really an issue of timing. The court said "whether or not there is a collision of interests between the plaintiff and Lawrence must be ascertained from the principal purpose of the suit or the primary and controlling matter in dispute." *Id.* at 333–34. The court emphasized that no one had yet opposed the plaintiff's allegations on the invalidity of the deed. The court said "[u]ntil there is an issue, either of law or fact, the order of realignment in this case would be premature." *Id.* at 334. If everyone agreed the deed was void, the only issue would be an adversarial partition and realignment would be unnecessary. Once they disagreed on the validity of the deed, Lawrence would have had to be realigned with the plaintiff.

policy limits." ECF No. 40, at 9. The problem with that argument is that Campus Edge and James River are allied on only lesser issues but opposed on the greater dispute over coverage.

The principal purpose of this case is to resolve whether *any* of the claims brought by Campus Edge against Arlington and APC will be covered by James River's insurance policy, not to prove whether Arlington engaged in fraud. *See Indemnity Ins. Co.,* 351 F.2d at 523; *see, e.g., La Shangrila, Inc. v. Hermitage Ins. Co.,* No. 8:07–CV–1133–T–24 EA, 2007 WL 2330912, at *2 (M.D.Fla. Aug. 13, 2007). This case is entirely about whether James River should get a judgment declaring it has *no* duty to defend or indemnify APC or Arlington against the allegations in Campus Edge's underlying lawsuit. James River and Campus Edge are plainly hostile to each other on that basic question.

The primary and controlling matter in dispute is whether the terms of the policy exclude coverage. There well may be several questions of law or fact to be resolved before the ultimate question about coverage is decided. Although it has taken somewhat inconsistent positions, Campus Edge apparently agrees with James River in certain respects; it wants to establish fraud or other intentional acts which, it may be assumed, would tend to defeat coverage under the policy. Campus Edge insists that coverage otherwise exists *independent* of exclusions for fraud or willful malfeasance. The fraud basis for denying coverage is but one of many subsidiary issues to whether there is coverage at all. Put another way, whether there was fraud is not *the* controlling matter in dispute; it is but one part of a larger dispute about coverage. *See Thomas,* 165 F.2d at 334 (explaining the determination is made by the "controlling *issues*" in the case (emphasis added)).

The requirement of complete diversity is not meant to "confine the jurisdiction of federal courts so inflexibly that they are unable to protect legal rights or effectively to resolve an entire, logically entwined lawsuit." *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 377, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). The mere fact that Campus Edge "favor[s] some of the relief sought by [James River] does not compel a realignment of the parties which would destroy [James River's] right to federal jurisdiction." *See Rex Co. v. Int'l Harvester Co.,* 107 F.2d 767, 768 (5th Cir.1939).

This Court finds that an actual, substantial controversy existed between James River and Campus Edge at the commencement of the action. They are properly aligned as to the primary purpose of the suit and the primary and controlling matter in dispute. Realignment is not proper under these circumstances. *See Mayfield,* 152 F.2d at 957.

For these reasons,

**IT IS ORDERED:**

1. The motion to dismiss by Defendants Arlington Properties, Inc., and Arlington Pebble Creek, LLC, ECF No. 40, is **DENIED.** To the extent Campus Edge has also moved for dismissal in ECF No. 42, that motion is also **DENIED.**

2. On this Court's own motion, the second amended complaint, ECF No. 21, is **DISMISSED** without prejudice for failure to properly allege facts which would establish complete diversity.

3. Within 14 days of the date of this order, Plaintiff may file an amended complaint.