**N.S.N. INTERNATIONAL INDUSTRY,**
**Plaintiff,**

v.

**E.I. du PONT de NEMOURS**
**& COMPANY, INC.,**
**Defendant.**

**No. 89 Civ. 1692 (KTD).**

United States District Court,
S.D. New York.

May 21, 1992.

---

3. Having found that Envirite is entitled to relief under Rule 60(b)(3), the court need not address Envirite's other claims.

Yerushalmi, Shiboleth, Yisraeli & Roberts (Richard H. Wender, Matthew C. Gruskin, of counsel), New York City, for plaintiff.

Townley & Updike (John Paul Reiner, Mark S. Sullivan, Stephenie J. Lannigan, of counsel), New York City, for defendant.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

On March 13, 1989, plaintiff N.S.N. International Industries, N.V. ("NSN"), a corporation organized and existing under the law of the Netherlands Antilles, commenced this diversity action against E.I. du Pont de Nemours & Co., Inc. ("Du Pont"), a Delaware corporation. NSN alleges breach of contract and misappropriation of technology. Du Pont filed its answer on June 9, 1989 and asserted, as an affirma-

tive defense, NSN's failure to join Rank Enterprises, Inc. ("Rank"), a Delaware Corporation, as a necessary party. On March 8, 1991, I denied Du Pont's motion, pursuant to Fed.R.Civ.P. 12(c) and 19, for an order: (a) compelling the joinder of Rank as a necessary and indispensable party to the lawsuit; (b) realigning Rank as a party plaintiff; and, (c) dismissing the complaint for lack of diversity jurisdiction. However, I granted Du Pont leave to renew its motion as one for summary judgment.

Du Pont renewed its motion on April 1, 1991. On August 26, 1991, NSN cross-moved for an order granting partial summary judgment. Du Pont then cross-moved for sanctions pursuant to Fed. R.Civ.P. 11. The parties extensively briefed their respective motions and submitted voluminous supporting documentation.[1]

### FACTS

NSN owns and has access to certain technical information pertaining to advanced armor systems (the "NSN Technology")[2]. In October 1986, Amnon Reshef and Nachman Kataczinsky, independent consultants to NSN,[3] met with Du Pont to discuss the possibility of jointly pursuing military production contracts. As a result of Reshef and Kataczinsky's efforts, on January 16, 1987, NSN and Du Pont entered into a cooperation agreement (the "NSN/Du Pont Agreement") to demonstrate various applications of the NSN Technology to the United States military.[4] Reshef, who was granted a power of attorney by NSN, executed the NSN/Du Pont Agreement as NSN's "authorized signatory."

In the NSN/Du Pont Agreement, the parties specifically mentioned two projects concerning applique armor for armored personnel carriers.[5] Du Pont also "acknowledge[d] that the information relating to the [NSN Technology] which NSN shall disclose to Du Pont pursuant to [the NSN/Du Pont] Agreement is extremely valuable to [NSN] and strictly confidential." NSN/Du Pont Agreement at ¶ 7.1. Du Pont recognized that, by signing the Agreement, it did not acquire an interest in the NSN Technology. *Id.* at ¶ 8.

In February 1987, Reshef and Kataczinsky formed Rank, a corporation wholly owned by Kataczinsky, to provide the engineering and design services which the NSN/Du Pont Agreement might engender.[6] Reshef served as Rank's President, while Kataczinsky served as its Executive

---

1. As part of its opposition to Du Pont's motion for summary judgment, NSN submitted a reply to Du Pont's 3(g) Statement subject to its objection that "a 3(g) Statement is inappropriate in connection with [Du Pont's] instant application. Rule 3(g) is applicable to motions made for summary judgment pursuant to [Fed.R.Civ.P. 56], [Du Pont's] instant application is for the joinder of a party pursuant to [Fed.R.Civ.P. 19]." NSN's Reply Statement to Du Pont's Statement Pursuant to Local Rule 3(g) at 1.

2. "The NSN Technology can be described as a series of formula and data to be used in conjunction with these formulas for the protection [of armored vehicles] against various ballistic threats." Affidavit of Amnon Reshef at ¶¶ 22.

3. At the time, Reshef and Kataczinsky were doing business as both Armorex Ltd. ("Armorex") and Rank Associates. Reshef, doing business as Armorex, had received the NSN Technology—contained on three computer disks and in other documents—from an NSN representative in August 1986. This meeting marked the first time Reshef had met this NSN representative, whom he met with on only "one or two" subsequent occasions. Reshef had no dealings with anyone else associated with NSN.

4. NSN attempts to clarify the difference between the NSN Technology and the "applications" of that technology as follows: "[the NSN Technology] consists of data that can be used to create numerous specific solutions, each designed to be added on to a different vehicle. To arrive at those solutions, engineering work has to be performed in order to install the armor system on the vehicle and otherwise meet customer requirements, the result being customized, "tailored" applications of the NSN Technology." Reshef Aff. at ¶ 11.

5. On June 19, 1987, the parties amended the NSN/Du Pont Agreement to include a third applique armor project. Reshef signed the amendment as NSN's "authorized signatory."

6. On September 17, 1987, the NSN/Du Pont Agreement was amended a second time to include a provision that Du Pont pay Rank for engineering and design work by Rank. Reshef also signed this amendment as NSN's "authorized signatory."

Vice–President. NSN and Rank then entered into a contract in which Rank agreed, in pertinent part:

> to provide and render to [NSN], effective immediately, such engineering and designing services as may be required from [NSN] in fulfilling its obligations under the [NSN/Du Pont Agreement]. In rendering the services hereunder, RANK shall act in accordance with such instructions as [NSN] shall give it.

Agreement dated 2/15/87 (the "NSN/Rank Agreement") at ¶ 2. The parties also agreed that Rank could use the NSN Technology in rendering the engineering and design services called for under the NSN/Rank Agreement. In rendering such services to NSN, Rank allegedly disclosed the NSN Technology at issue here to Du Pont.

By letter dated March 31, 1988, Rank agreed with Du Pont to perform subcontracting work on one of the three applique armor projects in the event that Du Pont was awarded the contract for that project. Letter from Du Pont to Rank of 3/31/88 [7].

Work on the three applique armor projects began in January 1987 and continued through the termination of the NSN/Du Pont Agreement in January 1989. During this time, no one associated with NSN other than Kataczinsky and Reshef worked with Du Pont. No NSN principals, officers, or employees dealt with Du Pont, and all communication between Du Pont and NSN was conducted through Reshef, Kataczinsky, or an attorney representing both NSN and Rank. Further, Reshef, Kataczinsky and other unnamed employees of Rank performed all the work NSN was obligated to perform under the NSN/Du Pont Agreement [8].

Rank, however, was involved in all aspects of project development. It leased office and warehouse space in Delaware and hired employees to work on the three applique armor projects. Rank developed sources of supply and purchased materials for the projects, instructing Du Pont on the processing of the materials. It worked on and tested armor targets which Du Pont later submitted to the military and supplied invoices for the materials used in testing the targets. On one of the three projects, the armor targets which Rank delivered to Du Pont bore only Rank's label and did not identify NSN in any way. Finally, when the United States Navy requested information on one of the three applique armor projects, Rank supplied that information to Du Pont, identifying it as confidential and proprietary in nature.

Proposals on the three applique armor projects prepared by Du Pont and submitted to the United States military identified certain information as being proprietary to Rank or its predecessor entities. Nowhere in any of these proposals did Du Pont make a similar assertion on behalf of NSN.

No production contracts were awarded to Du Pont as a result of the proposals submitted, or work performed, on the three applique armor projects. By letter dated December 20, 1988, Du Pont notified NSN that it was terminating the NSN/Du Pont Agreement.[9] In February, 1989, Rank instituted an action against Du Pont in New York State Supreme Court, alleging misappropriation of Rank's "engineering and design capabilities and other know-how." *Rank Enter. Inc. v. E.I. Du Pont de Nemours & Co.*, Index No. 48851/89. In June 1989, the court dismissed Rank's actions on *forum non conveniens* grounds.

**7.** The letter was accepted and agreed to by the parties on April 6, 1988.

**8.** NSN and Rank did not exchange written reports concerning the work performed under the Agreement. Apparently, however, NSN sent a written report to Du Pont summarizing their relations through 1987. I say "apparently" because the record is not clear whether NSN sent the report to Du Pont, or vice-versa. *See* Reply Statement of [NSN] to [Du Pont's] Statement Local Civil Rule 3(g) at ¶ 25 ("a written report was sent by NSN by Du Pont [sic]"). A copy of that report was provided to Rank.

**9.** The letter was addressed to Reshef at "[NSN] c/o Rank". The letter additionally stated that the proposed agreement between Du Pont and Rank would not be executed because "[o]ur relationship with Rank stemmed from the [NSN/Du Pont Agreement]. Rank, as licensee of [NSN's] technology, worked with Du Pont on the above programs arising under the [NSN/Du Pont Agreement]."

## DISCUSSION

Du Pont claims that Rank is a necessary and indispensable party to NSN's cause of action and that Du Pont's rights would be impaired if Rank is not joined. Specifically, Du Pont argues that: (1) Rank has a substantial interest in the subject matter of this lawsuit; (2) there is a symbiotic relationship between Rank and NSN; (3) Rank's engineering and design expertise is intertwined with the NSN Technology; and, (4) there is a substantial likelihood of double, multiple or inconsistent obligations if Rank is not joined.[10]

NSN opposes joinder, arguing that: (1) Rank and NSN are separate and distinct entities, and were recognized as such by Du Pont; (2) there is a clear line distinguishing the NSN Technology disclosed to Du Pont from the engineering and design expertise rendered by Rank to Du Pont; and (3) Rank has agreed that it has: (i) no interest in the NSN Technology, and (ii) no claim to any overlap between its engineering and design expertise and the NSN Technology.

▮ Rule 19 of the Federal Rules of Civil Procedure sets out a two-part analysis for determining whether to dismiss an action because joinder of an absent person is not feasible. The threshold inquiry is whether Rank should be joined, if possible, as a party to this action. *See* Rule 19(a). If Rank should be joined, the second step is determining, because Rank's joinder would destroy this court's diversity jurisdiction, whether the court can proceed "in equity and good conscience" in the absence of Rank. *See* Rule 19(b).

Rule 19(a)(2) provides, in pertinent part, that a person shall be joined in an action if:

the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may ... (ii) leave any of the persons already parties subject to a substantial risk of incurring

double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Assessing the instant facts under Fed. R.Civ.P. 19(a)(2)(ii), NSN concedes that it never gave the computer disks, and the documents, containing the NSN Technology directly to Du Pont. Rather, it made this proprietary information available to Du Pont solely through Rank. In addition, no part of the NSN Technology delivered to Du Pont was designated as NSN's exclusive property. Thus, there was no way for Du Pont to know just what, if anything, was NSN Technology and what was Rank's "know-how."

Given Rank's exclusive role in delivering the NSN Technology to Du Pont, it is clear that Rank claims an interest relating to the subject matter of the instant dispute between NSN and Du Pont. NSN's attempt to sever its interest in this action from Rank's by submitting affidavits stating that Rank does not assert any claim to the NSN Technology does not obviate Rank's interest in this litigation. The fact remains that Rank has already instituted one action alleging that it has an independent and unique claim arising out of the very same three projects that are at issue here.

Further, if Rank were to renew its suit against Du Pont for misappropriation of Rank's "know-how," the jury's assessment of liability and its apportionment of relief in that action might be inconsistent with the verdict rendered in the instant case. For example, a jury here could reach a determination that the armor system developed for one of the projects revealed solely the NSN Technology and that Du Pont misappropriated that technology. A second trier of fact in an action brought by Rank could determine that the armor system revealed only Rank "know-how" and that Du Pont misappropriated such "know-how." Such a possibility could subject Du Pont to double or inconsistent obligations. This threat of multiple and/or inconsistent

---

**10.** Du Pont argues that "the real issue is not in determining who owns the NSN Technology but in determining where NSN's claim to proprietary information ends and where Rank's begins. Du Pont is not challenging ownership but trying to ascertain the parameters of the proprietary information that may well be claimed by Rank in a subsequent lawsuit." [Du Pont's] Reply Memorandum of Law in Support of its Motion for Summary Judgment at 4 & n. 3.

obligations is just what Fed.R.Civ.P. 19(a)(2)(ii) seeks to prevent. *See Rapoport v. Banco Mexicano Somex, S.A.*, 668 F.2d 667, 669 (2d Cir.1982) (dismissal of action appropriate where failure to join necessary party exposed defendant to double, multiple or otherwise inconsistent obligations); *Zwack v. Kraus Bros. & Co.*, 93 F.Supp. 963, 965 (S.D.N.Y.1950) (aim of Fed. R.Civ.P. 19 is to protect "a defendant from a second liability on the same obligation should some court subsequently decide issues of fact in favor of some absent third party"). Thus, under the standards set out in Fed.R.Civ.P. 19(a)(2)(ii), Rank should be joined as a party, if feasible.

■ However, Rank's joinder would deprive this court of jurisdiction. If Rank were joined in this action, the parties would be arranged according to their sides in the dispute. *Independent Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 468, 46 S.Ct. 166, 169, 70 L.Ed. 357 (1926); *see also Lewis v. Odell*, 503 F.2d 445 (2d Cir.1974) ("federal courts are required to realign parties according to their real interests so as to produce actual collision of interests"). Because Rank's and NSN's interests in this suit are intertwined, it would be proper to align Rank as a plaintiff. As both Rank and Du Pont are Delaware corporations, however, joining Rank as a plaintiff would deprive this court of diversity jurisdiction. Yet, such alignment is proper despite its effect on jurisdiction. *See Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69, 62 S.Ct. 15, 17, 86 L.Ed. 47 (1941) (court acted correctly in realigning absent party as plaintiff improperly named as defendant, even though to do so divested the court of jurisdiction).

■ Thus, the court must next inquire whether Rank is an indispensable party without which the action cannot continue. Rule 19(b). In deciding whether to dismiss this action or to proceed with the parties already involved, this court should consider four factors: (1) to what extent a judgment rendered in Rank's absence might be prejudicial to Rank or to NSN and/or Du Pont; (2) the extent to which prejudice can be lessened or avoided by protective provisions in the judgment, by shaping the relief, or by other measures; (3) whether a judgment rendered in Rank's absence will be adequate; and (4) whether NSN will have an adequate remedy if the action is dismissed. *See id.* I will consider each of these factors in turn.

As already discussed, Rank's absence from the suit could subject Du Pont to double or inconsistent liability. The threat of double or inconsistent liability is a very real one. By bringing a suit against Du Pont in state court Rank has already indicated a willingness to assert claims against Du Pont arising out of the identical set of facts. Consequently, a judgment rendered on Rank's absence might be prejudicial to Du Pont.

The second factor focuses on the extent to which prejudice can be avoided by the shaping of relief. This case does not involve a sum of money or a discrete object which the court might readily apportion. It is an action for alleged misuse of proprietary information. Because such information amounts to an intangible object to which there are undetermined rights, it is not amenable to a court-ordered division. Despite Rank's assertion that it has no interest in the NSN Technology, I do not see how this court can shape relief in such a way to avoid possible prejudice to Du Pont.

The third factor calls upon this court to consider "the interests of the courts and the public in complete, consistent, and efficient settlement of controversies." *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111, 88 S.Ct. 733, 739, 19 L.Ed.2d 936 (1968). Because Rank may reinstitute its suit against Du Pont, proceeding in Rank's absence would not effectuate a complete and efficient disposition of the instant controversy. Du Pont would have to defend itself in another forum from allegations arising out of the identical set of facts, documents and witnesses involved in this action. *See Acton Co. of Mass. v. Bachman Foods*, 668 F.2d 76, 81 (1st Cir.1982) (third factor favors dismissal where absent party would remain free to initiate another lawsuit on the

claim). Therefore, an "adequate" judgment cannot be rendered in Rank's absence.

Finally, the fourth factor requires this court to weigh the plaintiff's interest in pursuing an action in the forum of its choice against factors which might counterbalance that interest. *Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 501 (7th Cir.1980). One such factor is the availability of alternative forums for the suit. As discussed above, allowing this action to proceed without Rank might subject Du Pont to double or inconsistent verdicts. However, if NSN sued Du Pont in Delaware state court, the state court there could hear the action and would have jurisdiction over all the parties. Thus, NSN will have an adequate remedy if the action is dismissed for nonjoinder.

 NSN asserts that Du Pont's "unjustified delay" in bringing this motion, and other "dilatory tactics," require the court to retain this case in "equity and good conscience." However, even if true, such actions would not give this court license to hear the case without Rank. Likewise, bare allegations of bias in Delaware state court are insufficient to show that NSN would be prejudiced, much less denied its day in court following a dismissal for nonjoinder.

For the foregoing reasons, Du Pont's motion for summary judgment is granted. Its motion for Rule 11 sanctions is denied. Having found that Rank is an indispensable party whose presence would divest this court of jurisdiction, dismissal of this case is appropriate.

SO ORDERED.