**Odis Wayne McCLUNG, Plaintiff,**

**v.**

**CAMP COUNTY, TEXAS, et al., Defendants.**

**No. TX–84–46–CA.**

United States District Court,
E.D. Texas,
Texarkana Division.

Jan. 27, 1986.

Robyn Ray, of East Texas Legal Services, Inc., Longview, Tex., for plaintiff.

Paul W. Mayben, Pittsburg, Tex., James P. Allison, of Gray, Allison & Becker, Austin, Tex., for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

HALL, District Judge.

Odis Wayne McClung brought this suit against Camp County, Texas, five (5) Camp County Commissioners, a Camp County Judge and the Camp County Sheriff, seeking compensatory and punitive damages totalling approximately one million dollars ($1,000,000.00), declaratory relief and injunctive relief. Plaintiff asserted that Defendants' conduct, while Plaintiff was incarcerated in the Camp County Jail, was violative of his constitutional rights as guaranteed by the Eighth and Fourteenth Amendments to The United States Constitution [The Civil Rights Act, 42 U.S.C. § 1983 (1981)] and also constituted compensable tortious conduct under the Texas Tort Claims Act, *TEX.CIV.PRAC. & REMS.CODE § 101.001 et seq.* (Vernon Pamph.1986). Defendants denied liability and counterclaimed for attorneys fees and costs. Included in this pendent state claim is the assertion that Defendants' conduct violated The Texas Jail Standards Act, *TEX CIV. CODE ANN. § 5115 et seq.* (Vernon Supp.1986). On November 6, 1985, this Court dismissed Plaintiff's claims for declaratory and injunctive relief, based on Defendants' Motion for Summary Judgment and Plaintiff's Response thereto.

Jurisdiction is vested in this Court by virtue of the federal question [28 U.S.C. § 1331 (1985)] presented pursuant to The Civil Rights Act, 42 U.S.C. § 1983 (1981), 28 U.S.C. § 1343 (1985).

It was undisputed at trial that on March 27, 1981, McClung was convicted of raping his stepdaughter and was sentenced to ten (10) years probation. He subsequently spent a total of twenty-one (21) days in the Camp County Jail awaiting hearings on alleged probation violations. This twenty-one (21) days is inclusive of three (3) separate periods of incarceration: April 11, 1982 through April 14, 1982 [4 days]; November 2, 1983 through November 12, 1983 [11 days]; and December 8, 1983 through December 14, 1983 [7 days].

Plaintiff summarized his position in the Joint Pre-Trial Order as follows: "Plaintiff has sustained injuries because he was incarcerated in ... overcrowded cells, he was denied adequate access to direct sunlight, was denied the opportunity to have adequate exercise, was never permitted to exercise outdoors, was fed inadequate meals, was not provided clean bedding, toiletries and clothing, was subjected to danger from fire hazards and was seriously injured as a result of fire". Additionally, Plaintiff contended at trial that certain medications were not administered to him according to prescription, which resulted in damage to the Plaintiff.

On December 11, 1985, this case was commenced and at the conclusion of the trial on December 12, 1985, the Court rendered Judgment for the Defendants, and after summarizing the evidence, stated: "I therefore hold that the Plaintiff was not

subjected to cruel and unusual punishment while incarcerated in the Camp County Jail, that the Defendants and their employees did not commit any acts of negligence in regard to the Plaintiff's incarceration, and thirdly, that the Plaintiff has not suffered any damages as a result of the Defendants violating any of his rights as guaranteed to him by the Constitution of the United States". The Court issues this opinion to supplement its December 12, 1985 ruling, by setting forth, in more detail, the factual and legal basis of its Judgment.

### THE LEGAL STANDARDS

#### Pendent State Claims

It is asserted in Plaintiff's First Amended Complaint, filed by Counsel in October of 1985, that "[t]his action is maintained pursuant to the Texas Tort Claims Act, Revised Civil Statutes, Art. 6252-19. In this connection, Plaintiff shows that the defense of immunity is unavailable by virtue of Section[s] 3 and 4 of the Revised Civil Statutes of Art. 6252-19". The Court notes that *TEX.REV.CIV.STAT.ANN. Art. 6252-19* (Vernon 1970) was repealed by Acts 1985, 69th Leg., p. 7218, ch. 959 § 9(1), eff. Sept. 1, 1985, and is now set forth as *TEX.CIV.PRAC. & REMS.CODE § 101.001 et seq.* (Vernon Pamph.1986). However, the effective version of "The Act" is substantially similar to the prior version. *Section 101.021* of "The Act" waives governmental immunity for "... personal injury ... proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment ... and [the] ... personal injury ... is so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law". *Section 101.-055(3)*, like former *Art. 6252-19 § 14(9)*, exempt a governmental unit from the general waiver of sovereign immunity set forth in *§ 101.021* for a claim arising *"from the failure to provide or the method of providing* police or *fire protection"*. (Emphasis added.) Under Texas caselaw,

"method" as used in the exemption provision, refers to the decision or plan as to how the act is performed: and if the negligence which causes an injury lies in the formulation of a policy such as the determination of a method of fire protection, the government remains immune from liability; however, if an officer or employee acts negligently in carrying out the formulated policy, government liability may exist under the Tort Claims Act. *State v. Terrell,* 588 S.W.2d 784, 788 (Tex.1979); *Genzer v. City of Mission,* 666 S.W.2d 116, 120 (Tex. App.—Corpus Christi 1983, writ ref'd n.r. e.); *Norton v. Brazos County,* 640 S.W.2d 690, 692–693 (Tex.App.—Houston [14th Dist.] 1982, no writ); *Forbus v. City of Denton,* 595 S.W.2d 621, 623 (Tex.Civ.App. —Fort Worth 1980, writ ref'd n.r.e.); *Cuddy v. Texas Department of Corrections,* 578 S.W.2d 522, 524 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.); *Jenkins v. State,* 570 S.W.2d 175, 179 (Tex.Civ. App.—Houston [14th Dist.] 1978, no writ).

As to any claims that Defendants' conduct violated the Texas Jail Standards Act, *TEX.CIV.CODE ANN. § 5115 et seq.* (Vernon Supp.1986), and the regulations promulgated thereunder, the Court is of the opinion that the Plaintiff did not prove such violation by a preponderance of the evidence, which evidence will be discussed below. Therefore, a discussion of the requirements of The Texas Jail Standards Act will not be set forth herein.

#### Civil Rights Claims

In order for Plaintiff to prove his case under the Civil Rights Act, he must show that Defendants' conduct rose to the level of violating his constitutional rights. *Hull v. City of Duncanville,* 678 F.2d 582, 584–585 (5th Cir.1982); *Jordan v. Five Unnamed Police Officers and Agents,* 528 F.Supp. 507, 511 (E.D.La.1981). The two (2) essential elements of any *section 1983* action are: 1) the complained of conduct must have been committed by a person acting under color of state law; and 2) this conduct must have deprived the plaintiff of rights, privileges or immunities secured by

the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981); *Augustine v. Doe*, 740 F.2d 322, 324–325 (5th Cir.1984).

Viewed in the light most favorable to the Plaintiff, the complaint asserts two (2) constitutional violations: cruel and unusual punishment, in violation of the Eighth Amendment as incorporated into the Fourteenth Amendment; and deprivation of liberty without due process of law, in violation of the due process clause of the Fourteenth Amendment.

In order for the Plaintiff to show that Defendants' conduct constituted cruel and unusual punishment under the Eighth Amendment, he must show that said conduct amounted to "deliberate indifference" on the part of Defendants. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Fielder v. Bosshard*, 590 F.2d 105, 107–109 (5th Cir.1979); S. Nahmod, *Civil Rights & Civil Liberties Litigation § 3.07* (1979 and Supp.1985). The totality of the conditions of confinement does not offend the Constitution unless prison conditions are cruel and unusual, and not merely harsh or restrictive. *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); *Ruiz v. Estelle*, 679 F.2d 1115, 1140 (5th Cir.1982), amended in part and vacated in part, 688 F.2d 266 (5th Cir.1982), cert. denied 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983). The Fifth Circuit Court of Appeals has stated that "... the constitutional mandate against cruel and unusual punishment is not a warranty of pleasant prison conditions". *Ruiz v. Estelle, supra* at 1145.

To state a substantive due process claim, the Plaintiff must show that Defendants' conduct rose to the level of being "conduct which shocks the conscience". *Rochin v. People of California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952); *Juncker v. Tinney*, 549 F.Supp. 574, 581 (D.Md. 1982); S. Nahmod, *Civil Rights & Civil Liberties Litigation § 3.08* (1979).

And in determining whether or not state action has violated the Plaintiff's right to procedural due process under the Fourteenth Amendment, the Court must make two (2) inquiries: 1) whether the state action has deprived the Plaintiff of a protected interest—life, liberty or property; and 2) and, finding such deprivation, whether the state procedures available for challenging the deprivation satisfy the requirements of due process. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 3203–3204, 82 L.Ed.2d 393 (1984); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153, 71 L.Ed.2d 265 (1982); *Parratt v. Taylor, supra* 451 U.S. at 535–537, 101 S.Ct. at 1912–1914; *Ingraham v. Wright*, 430 U.S. 651, 672, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977).

Under recent Fifth Circuit caselaw, the availability of and adequate state tort remedy will, in certain circumstances, negate the contention that an injury sustained through the negligence of Defendants was without due process of law. *Parratt v. Taylor, supra; Thibodeaux v. Bordelon*, 740 F.2d 329 (5th Cir.1984); *Compare: Augustine v. Doe, supra.* The post deprivation remedies available to McClung under Texas law through tort causes of action against all of the Defendants [*TEX. CIV.PRAC. & REMS.CODE 101.001 et seq.* (Vernon Pamph.1986) ], negates the Plaintiff's assertion that the alleged negligence of the Defendants deprived the Plaintiff of liberty without due process of law, except for any claim arising "from the failure to provide or the method of providing ... fire protection" because immunity for said conduct has not been waived under the Texas Tort Claims Act, *TEX.CIV.PRAC. & REMS.CODE § 101.055(3)* (Vernon Pamph. 1986). *Thibodeaux v. Bordelon, supra* at 339. Thus, only the contentions relating to negligence in "the failure to provide or the method of providing ... fire protection", can be considered by this Court in determining whether or not a *section 1983*, Fourteenth Amendment procedural due process clause violation occurred.

## THE FACTS

As to the allegation that Plaintiff was incarcerated in overcrowded cells, the only

evidence presented on the issue was the testimony of David Rockwell, a former Camp County prisoner, pursuant to the Court's inquirty. Based on said testimony, the Court concludes that Plaintiff was not incarcerated in an overcrowded cell, and that Plaintiff's constitutional rights were not violated nor did Defendants' conduct constitute a tort in regards to overcrowded conditions at the Camp County Jail.

▪ As to the allegations that Plaintiff was denied adequate access to direct sunlight, was denied the opportunity to have adequate exercise and was never permitted to exercise outdoors, the evidence at trial was that there was adequate room for the prisoners to exercise in their cells. The testimony of Eugene Ivory, a former Camp County prisoner, was that prisoners exercised in the cells, although Ivory never saw McClung so exercise. David Rockwell also testified that there was enough room in each cell for a prisoner to exercise. In fact, McClung's own testimony agreed with that of Ivory's and Rockwell's, that there was enough room in the cells for prisoners to exercise. On cross-examination McClung further testified that he would *not* say that his health had suffered due to a lack of exercise for the four (4), eleven (11) and seven (7) day periods he was confined in the Camp County Jail. The Camp County Sheriff testified that although there was no supervised exercise outside of the cells for the prisoners, the situation was allowable under the plan filed with the State of Texas because variances had been issued for the reason that the facility did not have an exercise or day room. Furthermore, Defense Exhibits sixteen (16) through eighteen (18) were introduced into evidence to show that the *State had issued the Camp County Jail Certificates of Compliance with The Texas Jail Standards Act before, during and after the periods of Plaintiff's confinement.* Based on the aforementioned evidence, the Court concludes that the conditions placed on Plaintiff's physical exercise at the Camp County Jail did not constitute a violation of Plaintiff's constitutional rights nor did they

amount to tortious conduct on the part of Defendants. *Ruiz v. Estelle, supra* at 1152.

▪ As to the allegations regarding the lack of clean bedding, clothing and toiletries, Eugene Ivory testified that he would go with the Prison Cook/Jailer, Paulette Ross, once a week, to a laundromat across the street from the jail, to wash the prison laundry. Ivory further testified that bedding was available to inmates upon request. Furthermore, under paragraphs four (4) through six (6) of the "Sanitation Plan" filed by the Sheriff with the State [Plaintiff's Exhibit 2], it was stated that the prisoners were provided with clean bedding, and as mentioned above, the Camp County Jail was found to be in compliance with The Texas Jail Standards Act, both before, during and after Plaintiff's terms of confinement. The Sheriff testified that, so far as he knew, the prisoners' linens were cleaned once a week. The Sheriff further testified that personal toiletry articles were available to the prisoners and that if a prisoner did not like what was available, he could procure his own supplies from family and/or friends. Mrs. McClung testified that she brought her husband these type of supplies. Based on the aforementioned evidence, the Court concludes that clean bedding, clothing and toiletries were provided to Plaintiff, and that Plaintiff's constitutional rights were not violated nor did Defendants' commit any torts against Plaintiff in failing to provide clean bedding and clothing, and toiletries.

▪ As to the allegation that Plaintiff did not receive adequate meals at the Camp County Jail, the testimony of various witnesses was that prisoners were fed two (2) meals per day, once in the early morning and then again at about 5:00 p.m. In addition, the prisoners were allowed to receive any food brought to them by their family and/or friends. Both McClung and his wife testified that Plaintiff did, in fact, receive supplementary food from his family. Based on the testimony of the various witnesses regarding the typical menus and based on the testimony of the Prison-Cook Paulette Ross, that she prepared the meals

based on menus provided by The Texas Commission on Jail Standards, and that the meals were of sufficient quality and quantity to provide an adult male with a balanced diet, the Court concludes that Plaintiff was fed an adequate diet, and that Plaintiff's constitutional rights were not violated nor was the Defendants' conduct tortious regarding food provision at the Camp County Jail.

Regarding the allegation of "inadequate meals" the Plaintiff offered testimony that he was an insulin dependent diabetic and that he therefore required up to as many as six (6) small meals per day. Dr. Robert White, the Plaintiff's doctor, testified that feeding an insulin dependent diabetic two (2) meals per day instead of more frequent smaller meals, would put more stress on that person's body, thereby making him more susceptible to injury. It is undisputed that Plaintiff suffered a heart attack and smoke inhalation, either during or shortly after another prisoner started a fire at the Camp County Jail on April 14, 1982. Through Dr. White's testimony, Plaintiff attempted to demonstrate to the Court that, in addition to the contention that Plaintiff's injuries were caused by the fire for which Defendants were responsible, an "inadequate diet" also contributed to those injuries—however, this Court is not so persuaded. Dr. White testified that heart disease is generally a condition which develops over time, that Plaintiff had been a diabetic for twelve (12) to fourteen (14) years prior to his first heart attack, that Plaintiff had been overweight for years, and that overweight can contribute to making a diabetic a high risk cardiac patient. Furthermore, Dr. White testified that an overweight diabetic patient with a history of heart disease in his family [on cross-examination Mrs. McClung testified that Plaintiff's brother had had a heart attack in his mid-forties] would have added stress if he were charged with a serious crime, had a public trial and was then incarcerated. And although Dr. White was not Plaintiff's doctor in 1982, at the time of Plaintiff's first heart attack during his four (4) day stay in the Camp County facility, he

was the Plaintiff's doctor during Plaintiff's subsequent stays in the jail; however, Dr. White does *not recall sending the Sheriff any written instructions regarding the Plaintiff's dietary requirements.* Nor was testimony offered that McClung ever requested a special diet during his incarceration at the Camp County Jail. Paulette Ross, the Prison Cook, testified that McClung never complained to her about the food and that she often prepared food that he liked. In addition, the Court notes the relatively short periods of Plaintiff's incarceration in concluding that, under the circumstances, Plaintiff was not fed an "inadequate diet", and the Plaintiff's constitutional rights were not violated nor was Defendants' conduct tortious regarding food provision at the Camp County Jail.

■ As to the allegation that Plaintiff's medications were not administered according to prescription, Plaintiff testified that his medications were administered either by Paulette Ross or under the direction of the Sheriff, depending on who was on duty at the time. Ms. Ross testified that she gave McClung one medication three (3) times per day instead of the prescribed four (4) daily doses because she was off-duty at the time the fourth dose was to be administered. According to Plaintiff, on the weekends the Sheriff took him to the Sheriff's Office to take his medications. The Sheriff testified that, insofar as he knew, McClung was given all of his medications according to prescription, and that in his opinion, the Plaintiff had been given proper medical care.

In fact, the evidence showed that McClung had received special treatment during his stay at the Camp County Jail. This included being allowed out of jail on his own recognizance on one (1) occasion, to accompany his wife to the doctor's office. On another occasion, the Plaintiff was allowed out of jail for health reasons, for which the Sheriff was later publicly chastised by a State District Judge. The record showed that these special privileges emanated from the fact that the Sheriff and the Plaintiff had known each other for

years. The Plaintiff had worked for the Sheriff's Department, under the direction of the Sheriff, as a dispatcher prior to his arrest for rape of his stepdaughter. The Plaintiff testified that he was on good terms with the Sheriff when he worked as a dispatcher, and that they remained on good terms at all times. In light of the special relationship which existed between the Sheriff and McClung and the special considerations which McClung had received, it seems incredible to the Court that McClung would have been administered medication in a way that violated his constitutional rights or that constituted tortious conduct on the part of Defendants.

Even if, as Plaintiff testified, his insulin was administered two (2) times per day instead of the three (3) prescribed doses, the evidence also showed that Plaintiff had plenty of supplementary food from his family to alleviate any side effects this slight variance in drug dosage could have caused. Furthermore, it must be borne in mind that Plaintiff's periods of incarceration were relatively brief: four (4), eleven (11) and seven (7) days; therefore, any alleged long term effect on the Plaintiff's health, or any alleged injury resulting from this slight variation in drug dosage, is questionable. Additionally, Paulette Ross testified that on one (1) occasion the Plaintiff had requested more medication than he had been prescribed, and that he became angry with her when she refused to give him the extra requested dose. The Sheriff testified that if the Plaintiff had complained about the alleged incorrect administration of medication, the Sheriff would have investigated the matter and had the situation corrected. Based on the aforementioned testimony, the Court concludes that the Plaintiff was not administered his medications in a way that constituted either a violation of his constitutional rights or tortious conduct on the part of Defendants. *See: Burns v. Head Jailor of La Salle County Jail,* 576 F.Supp. 618, 620 (N.D.Ill.1984) wherein a jail inmate's allegations that jail personnel occasionally either ran out of medicine or were late in delivering his medication to him, which inmate attributed to negligence,

was insufficient to show deliberate indifference to serious medical needs essential to a claim of constitutionally inadequate medical care. In the *Burns Case, supra,* the Plaintiff failed to allege any actual harm from the acts or omissions of the jail personnel; here, McClung has failed to prove any actual harm from the allegedly improper drug administration.

Regarding the allegation that fire hazards at the Camp County Jail violated Plaintiff's constitutional rights and constituted tortious conduct on the part of Defendants, and that said fire hazards resulted in injury to the Plaintiff, the uncontroverted testimony at trial was that, on April 14, 1982, a fire was started by another prisoner in McClung's cell named McNutt, from the remains of the personal items the prisoners were allowed. It was also uncontroverted that shortly before the fire was started McNutt was visited by his wife, she said that she would divorce him, which upset McNutt greatly. There was also testimony that McNutt was upset because his relatives refused to post his bail. According to McClung, McNutt then said that he would burn down the jail, so McClung talked to McNutt to calm him down. McClung made no efforts to tell the authorities about McNutt's plan, nor did Paulette Ross, who was in the office, which was in close proximity to the cell, hear any prisoner shout "fire". Yet, it is undisputed that McNutt set a fire so severe that the prisoners had to be evacuated from the jail, and McClung had to be transported to the hospital.

David Rockwell, a prisoner at the time of the fire, testified that he heard McNutt say that he would set a fire and that another prisoner named Brown encouraged McNutt to do so. Rockwell further testified that the prisoners waited until the fire was going before they began to holler and scream for help. According to Rockwell, the office where Ms. Ross was stationed was close to where the fire was started. Eugene Ivory, also a prisoner at the time of the fire, affirmed Rockwell's testimony that all of the prisoners knew of McNutt's plan and

that the Sheriff's Office where Ross was stationed was close enough to the cell for her to hear the inmates. Ivory testified that the prisoners laughed at the fire and waited for Brown's signal before they began to yell for help.

On cross-examination of the Sheriff, the Plaintiff brought out that the only smoke and fume removal system was a portable machine kept out in the hall and that there was a solid door between the hall and the jail cells. Additionally, the Jail was not equipped with a mechanical voice communication device for prisoner communications to jail officials; however, such a mechanism had been torn off of the wall.

Despite the situation, Paulette Ross testified that a smoke alarm went off and she immediately notified the Sheriff by phone, who was in another building immediately adjacent to the jail. Ms. Ross testified that the Sheriff came to let the prisoners out of the jail approximately thirty (30) seconds after her call. Ms. Ross testified that she did not hear any inmate yell "fire" and that she would have heard any such outcry. (Earlier in the day McNutt had been screaming obscenities which had been clearly audible to Ross.) The Sheriff testified that he heard the smoke alarm when he arrived at the scene, and that about a minute to one and one-half (1½) minutes elapsed from the time he was notified until he got the prisoners out of the cells. Eugene Ivory testified that the Sheriff came "almost immediately" after the inmates began to holler for help. No evidence was offered that any other inmate, besides McClung, was hospitalized after the fire. Based on the facts before the Court, as outlined above, the Court holds that the Defendants did not violate any of Plaintiff's constitutional rights nor commit tortious conduct in regard to the fire-safety conditions at the Camp County Jail.

It is, therefore, ORDERED, ADJUDGED and DECREED that Judgment be entered for the Defendants, Camp County, Texas, et al., and that Plaintiff Odis Wayne McClung recover nothing against said Defendants. Additionally, it is ORDERED, ADJUDGED and DECREED that Defendants recover nothing against Plaintiff for attorneys fees and costs.