FEDERAL INSURANCE COMPANY,
Plaintiff,

v.

BILL HARBERT CONSTRUCTION COMPANY and The Board of Water and Sewer Commissioners of the City of Mobile, Defendants.

No. Civ.A. 98–0616–RV–M.

United States District Court,
S.D. Alabama,
Southern Division.

Dec. 10, 1999.

L. Graves Stiff, III, Joel S. Dickens, Elise Frohsin, Starnes & Atchison, Birmingham, AL, Edward C. Greene, Mobile, AL, for Federal Insurance Company.

Edward C. Greene, Frazer, Green Upchurch & Baker, LLC, Mobile, AL, John D. Sours, Wasson, Sours &Harris, P.C., Atlanta, GA, for Bill Harbert Construction Company.

Elias J. Saad, James E. Atchison, Mona A. Vivar, Atchison, Crosby, Saad & Beebe, P.C., Mobile, AL, for Board of Water and Sewer Commissioners of the City of Mobile.

Jerry A. McDowell, Michael D. Knight, Brian P. McCarthy, McDowell Knight Roedder & Sledge, L.L.C., Mobile, AL, for Sika Corporation.

Jeffery J. Hartley, Richard O. Kingrea, Adams & Reese, LLP, Mobile, AL, for BCM Engineers, Inc., ATC Group Services.

### MEMORANDUM OPINION AND ORDER

VOLLMER, District Judge.

Plaintiff Federal Insurance Company ("Federal") brings this diversity action

against defendants Bill Harbert Construction Company ("Harbert") and the Board of Water and Sewer Commissioners of the City of Mobile ("the Board") under the Declaratory Judgment Act, 28 U.S.C. § 2201. The Board has filed a motion to realign the parties on the basis that Harbert's interests are aligned with Federal's concerning the primary issue in the case.[1] After carefully reviewing the law and considering the submissions of the parties,[2] the court concludes that the motion is due to be granted. Consequently, because realignment destroys diversity jurisdiction, this case will be dismissed in its entirety.

## I. BACKGROUND

In December 1994 and January 1995, respectively, Harbert and the Board entered into two separate public construction contracts for upgrades and modifications to a waste water treatment plant and sludge system located in Mobile, Alabama. Federal issued bonds securing Harbert's performance of the construction contracts and securing Harbert's payments to all labor and material suppliers for services and supplies rendered in connection with those contracts. Harbert, the general contractor, is the principal of the bonds, and the Board, the owner of the waste water treatment plant and sludge system, is the obligee. By separate written agreement, Harbert is obligated to indemnify and exonerate Federal for any claims, demands or losses arising from the construction projects.

During the course of construction, a dispute arose between Harbert and the Board as to whether the plans and specifications for sealing two oxygenated reactor basins serving the waste water treatment plant were adequate. Harbert insisted that various modifications were necessary to achieve the specified pressure test results required by the contract. The Board responded that the problem was shoddy work rather than faulty plans, and it refused to revise the specifications for the reactor sealant system.

Unable to resolve these differences, the Board terminated the contracts and demanded that Federal discharge its obligations under the bonds to complete the improvement projects. After hiring an independent engineering consultant and performing an extensive investigation of the design and construction of both projects, Federal determined that there appeared to be defects in the Board's plans and specifications, including the design of the sealant system that Harbert was to use in the oxygenated reactor basins.

Federal then filed this declaratory judgment action seeking a determination of the rights and obligations of the parties under the construction contracts and the surety bonds. Explaining that deficiencies apparently exist in the Board's specifications, Federal's complaint expressed doubts as to whether Harbert would be able to achieve the requisite pressure results called for in the construction contracts without certain design modifications that were rejected by the Board. After setting forth this background, the complaint asks the court to resolve whether Harbert materially defaulted in its performance of either or both

---

1. *See* "Defendant Board of Water and Sewer Commissioners of the City of Mobile's Motion to Realign Parties" (Doc. 81).

2. The court has considered the "Brief in Support of Defendant Board of Water and Sewer Commissioners' Motion to Realign Parties" (Doc. 82); Federal's "Response to Defendant City of Mobile's Motion to Realign" (Doc. 96); Federal's "Memorandum in Opposition to Motion to Realign" (Doc. 98); Harbert's "Response to the Motion to Realign the Parties"

(Doc. 100); the "Affidavit of Walter Maxwell" (Doc. 103); the Board's "Brief in Support of Motion to Realign" (Doc. 104); the Board's "Response to Federal Insurance Company's Memorandum" (Doc. 105); and Harbert's "Reply in Opposition to the Brief of the Board of Water and Sewer Commissioners of the City of Mobile in Support of its Motion to Realign" (Doc. 107).

bonded contracts; whether the Board wrongfully terminated or breached either or both contracts; and whether Federal is obligated to complete either both of projects pursuant to the performance bonds or is instead discharged from all liability due to the Board's breach.

Harbert and the Board answered the complaint and asserted cross-claims for breach of contract against each other. Harbert alleges that the Board impeded Harbert's performance of the construction contracts and then terminated both contracts without cause. The Board countered that Harbert defaulted on both contracts by failing to perform the work in either a timely manner or in accordance with the terms and conditions of those contracts. The Board also filed a counterclaim against Federal, asserting that Federal had failed to discharge its obligations under the surety bonds. Harbert, on the other hand, did not file a counterclaim or otherwise assume an adversarial position against Federal. Recognizing this fact, the Board moves to realign Federal and Harbert on the same side of the lawsuit. Harbert joins Federal in opposing the motion.

## II. DISCUSSION

The Declaratory Judgment Act provides that federal district courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Act, however, does not confer federal subject matter jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950). Rather, it "merely creates a new remedy in cases or controversies for which an independent basis of federal jurisdiction exists." *First Fed. Sav. & Loan Ass'n v. Brown,* 707 F.2d 1217, 1220 (11th Cir.1983). Thus, to sustain a declaratory judgment action in federal court, a plaintiff must invoke a basis for subject matter jurisdiction that is separate from the Declaratory Judgment Act itself.

Federal asserts that the court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 to hear this declaratory judgment action. Section 1332 grants federal subject matter jurisdiction over actions between citizens of different states in which the amount in controversy is greater than $75,000. On the face of the complaint, it appears that these requirements are satisfied. The amount in controversy is sufficient because the collective value of the contracts is more than $12,000,000, and it seems that there is complete diversity of citizenship because both defendants, Harbert and the Board, are corporate citizens of Alabama, while Federal, the sole plaintiff, is not.

Nonetheless, it is well-established that "[d]iversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants." *Indianapolis v. Chase National Bank,* 314 U.S. 63, 69, 62 S.Ct. 15, 17, 86 L.Ed. 47 (1941). It is instead the court's responsibility to properly align the parties and determine whether diversity jurisdiction exists. Justice Frankfurter, writing for the majority in *Indianapolis,* explained when realignment is proper:

> To sustain diversity jurisdiction there must exist an "actual", "substantial", controversy between citizens of different states.... It is our duty, as it is that of the lower federal courts, to "look beyond the pleadings, and arrange the parties according to their sides in the dispute".... Whether the necessary "collision of interest" exists, is therefore not to be determined by mechanical rules. It must be ascertained from the "principal purpose of the suit," and the "primary and controlling matter in dispute."

*Id.,* 62 S.Ct. at 17 (internal citations omitted). The purpose of determining whether

an "actual, substantial controversy" exists between a named defendant and a named plaintiff regarding the "principal purpose of the suit" is to ensure that federal courts are adjudicating actions in which there is a true case or controversy. "In other words, realignment doctrine is, at its foundation, concerned with the constitutional ban on advisory opinions." *Nevada Eighty-Eight, Inc. v. Title Ins. Co.*, 753 F.Supp. 1516, 1525 (D.Nev.1990). Admittedly, however, there is a significant division among the lower courts on how to apply the realignment doctrine. Specifically, courts are in disagreement on whether they must look to the "principal purpose of the suit" in deciding whether there is a sufficient collision of interest to avoid realignment or whether the existence of any "actual, substantial controversy" may suffice to sustain the pleaded positions of the parties. As a result, two distinct approaches to party realignment have emerged.

█ Several circuits apply the "principle purpose" or "primary issue" test and look beyond the pleadings to identify the primary matter in dispute and then align the parties according to their positions with regard to that issue. *See, e.g., Employers Ins. of Wausau v. Crown Cork & Seal Co.*, 942 F.2d 862, 866 (3d Cir.1991); *United States Fidelity & Guar. Co. v. A & S Mfg. Co.*, 48 F.3d 131, 133 (4th Cir.1995); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1178 (5th Cir.1984); *United States Fidelity & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir.1992); *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 n. 2 (9th Cir.1987). In so doing, these courts ignore all "actual and substantial ancillary or secondary issues" between the named parties

in determining the proper alignment, regardless of how significant those issues may be. *Thomas Solvent Co.*, 955 F.2d at 1089.

Other circuits, however, have interpreted *Indianapolis* to mean that realignment is proper only where there are no actual conflicts between the parties. *See, e.g., Maryland Cas. Co. v. W.R. Grace & Co.*, 23 F.3d 617, 622–23 (2d Cir.1993); *American Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146, 151 (7th Cir.1981); *Universal Underwriters Ins. Co. v. Wagner*, 367 F.2d 866, 870–71 (8th Cir.1966); *Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1387 (10th Cir.1978).[3] Courts applying this "actual and substantial conflict" test consider all potential conflicts between the named parties and do not distinguish between primary and secondary issues when determining whether realignment is appropriate. *Trane*, 657 F.2d at 151.

Here, the parties concur that *Weller v. Navigator Marine, Inc.*, 737 F.2d 1547 (11th Cir.1984) (per curiam), is the leading Eleventh Circuit decision on realigning parties in a declaratory judgment action,[4] but they are in sharp disagreement as to which test the court of appeals applied in that case. The Board contends that the *Weller* court applied the primary purpose test, while Federal and Harbert insist that the court adopted the actual and substantial controversy test in determining whether to realign the parties.

Given the outcome-determinative nature of both realignment tests, this disagreement is not just an exercise in semantics. As one leading treatise explains, when the primary purpose test is applied, defendants are often "aligned as plaintiffs and diversity is destroyed." 13B C. Wright, A.

---

**3.** The First Circuit has adopted what appears to be a hybrid of the primary purpose and actual controversy tests. *See U.S.I. Properties Corp. v. M.D. Constr. Co.*, 860 F.2d 1, 4–5 (1st Cir.1988).

**4.** The only other cases in which the Eleventh Circuit directly addressed the issue of party realignment have involved shareholder derivative actions. *See Duffey v. Wheeler*, 820 F.2d 1161 (11th Cir.1987); *Liddy v. Urbanek*, 707 F.2d 1222 (11th Cir.1983).

Miller & E. Cooper, Federal Practice and Procedure § 3607 (2d ed. Supp.1999). Conversely, courts applying the actual and substantial controversy test commonly hold that the mere fact that a defendant may "share an interest with the plaintiff ... does not require realignment." *Id.*

The Seventh Circuit's decision in *Fidelity and Deposit Co. v. City of Sheboygan Falls,* 713 F.2d 1261 (7th Cir.1983), provides an instructive example. In *Sheboygan Falls,* a general contractor entered into a construction contract to build a garbage incinerator for two neighboring towns. A surety issued a performance bond, and the contractor agreed to indemnify the surety for any claims or losses arising from the construction projects. After the incinerator was built, it failed to satisfy certain air pollution regulations and had to be shut down. Left with a useless incinerator, the towns took the position that the contractor had breached the contract through inadequate performance, and they demanded compensation from the surety pursuant to the terms of the bond.

The surety, a corporate citizen of Maryland, brought a federal declaratory judgment action against the contractor, both towns, and several subcontractors, all of whom were citizens of Wisconsin, on the basis of diversity jurisdiction. In its answer, the contractor denied breaching the construction contract, but it admitted that liability would exist under the indemnification agreement if it had. The Seventh Circuit recognized that this answer essentially eliminated any potential conflict between the surety and the contractor, but it held that this post-complaint admission was irrelevant to the question of realignment because jurisdiction "depends on the facts when the complaint is filed rather than when the answer is filed." *Id.* at 1266. Thus, the court concluded, as long as the surety and the contractor were adverse when the complaint was filed, jurisdiction was proper and realignment was unwarranted.

The court then determined that there was in fact an "actual, substantial conflict" between those two parties. *Id.* at 1266–67. Specifically, this "adverseness" was demonstrated by the fact that the complaint "pleaded a genuine controversy between [the surety] and [the contractor] over [the contractor's] liability on the indemnity agreement." *Id.* at 1267. The court conceded that this dispute between the surety and the contractor "was secondary to their alliance on the question whether [the contractor] had broken its contract with the towns," but it concluded that any actual adversity was sufficient to preclude realignment. *Id.* at 1267–68. The Seventh Circuit therefore held that the parties were properly aligned and that it retained diversity jurisdiction over the case. *Id.* at 1268.

Not surprisingly, Federal urges the court to follow the Seventh Circuit's reasoning in *Sheboygan Falls* and reach the same conclusion in this case. But even if the court were inclined to apply the actual and substantial controversy test here, it obviously could not do so if the Eleventh Circuit has adopted the principle purpose test. The court must therefore determine which test applies in this circuit.

As noted above, the parties correctly agree that *Weller v. Navigator Marine, Inc.,* 737 F.2d 1547 (11th Cir.1984) (per curiam), is the leading Eleventh Circuit case on realignment, but they dispute which test the *Weller* court applied in determining whether alignment was proper. The facts in that case are relatively simple. Weller filed a complaint in federal court seeking a declaratory judgment that a purchase option held by Navigator Marine was invalid. Weller also named as defendants the two individuals who had contracted to buy the property purportedly covered by that option. Navigator Marine filed a motion to realign the individual defendants as plaintiffs on the ground that their ultimate interest in the outcome of

the litigation coincided with Weller's. Because one of the individual defendants was a Florida citizen, as was Navigator Marine, realignment would have required dismissal for lack of diversity jurisdiction. The district court denied the motion, holding that the individual defendants were adverse to Weller because they could bring a breach of contract action against him if he was unsuccessful in obtaining a declaration that Navigator Marine's purchase option was not effective.

The Eleventh Circuit reversed. The court acknowledged that the individual defendants could bring a breach of contract claim against Weller if Navigator Marine prevailed in the declaratory judgment action, but it concluded that this fact did "not indicate that the position of [the individual defendants] was not substantially identical to that of Weller in the suit before the court." *Id.* at 1549. Thus, when the court of appeals looked "to the *true interest of the parties* and the positions asserted by them before the district court," it was clear that the individual defendants' interest in having Navigator Marine's purchase option declared invalid was "the same as the interest of Weller." *Id.* at 1548 (emphasis added). Accordingly, because there was no dispute between Weller and the individual defendants as to the primary issue of the suit, the court held that the individual defendants should have been realigned as plaintiffs and that the case should have been dismissed for lack of federal diversity jurisdiction. *Id.* at 1549.

Notwithstanding the fact that the *Weller* court clearly ignored a secondary dispute in determining the proper alignment, Federal and Harbert insist that the Eleventh Circuit did not apply the primary purpose test in that case. As support, these parties rely upon the following statement in *Weller:* "In determining whether the district court properly denied Navigator's motion for realignment and dismissal, we must 'determine whether there is an *actu-*

*al or substantial controversy* between citizens of different states ...'" *Id.* at 1548 (quoting *Indemnity Ins. Co. v. First Nat'l Bank,* 351 F.2d 519, 522 (5th Cir.1965)) (emphasis added). According to Federal and Harbert, the *Weller* court's use of the phrase "actual or substantial controversy" indicates that the Eleventh Circuit adopted the realignment test of the same name. For the reasons that follow, the court does not agree.

First, as explained above, the *Weller* court acknowledged that an actual dispute existed between the named parties—it just chose to disregard that dispute because it was secondary to their "true interest" in the litigation. *Id.* As the Seventh Circuit's holding in *Sheboygan Falls* demonstrates, if the Eleventh Circuit had been applying the actual or substantial controversy test, this secondary controversy would have been sufficient to preclude realignment. 713 F.2d at 1267. Thus, although the *Weller* court did not expressly state that it was realigning the parties around the "principal issue" or "primary purpose" of the declaratory judgment action in that case, it is clear from the opinion that the court of appeals was doing just that.

The second reason the court concludes that *Weller* did not adopt the actual or substantial controversy test is that the quote upon which Federal and Harbert rely is taken directly from a former Fifth Circuit case applying the primary purpose test. *See Indemnity Ins. Co. v. First Nat'l Bank,* 351 F.2d 519, 522 (5th Cir. 1965) ("it is our duty ... to notice the jurisdictional question and determine whether there is an actual, substantial controversy between citizens of different states, all of whom on one side are citizens of different states from all parties on the other side. *Whether there is such a controversy is to be ascertained from the principal purpose of the suit and the primary and controlling matter in dispute.*") (emphasis added). Because the *Indemni-*

*ty Insurance* opinion constituted the law of the former Fifth Circuit[5] when the Eleventh Circuit was formed in 1981,[6] that decision was binding on the *Weller* court. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981). Thus, even if it were not apparent which test *Weller* applied, any such ambiguity is clarified by the fact that the *Weller* court was obligated to follow the principal purpose test applied by the former Fifth Circuit in *Indemnity Insurance.*[7] In sum, this circuit looks to the principal purpose of the lawsuit when determining whether the parties are properly aligned.

Applying that test to the facts as they existed when this action was commenced, it is obvious that Harbert must be realigned as Federal's co-plaintiff.[8] There is no dispute between those parties as to the primary issue in this case, which is whether Federal has an obligation to complete the construction contracts pursuant to the terms of the performance bonds. As Federal admits in its complaint, it is discharged of all liability under the bonds if the Board breached the contracts. Thus, if Harbert succeeds in its cross-claim against the Board for breach of contract, then Federal will obtain a declaration of no liability under the performance bonds. Accordingly, because Federal and Harbert would both benefit from a determination that the Board breached the construction contracts, their interests are clearly aligned on the primary issue in this case.

Federal contends that two actual controversies existed between itself and Harbert when this action was commenced. First, Federal contends that Harbert was "opposed" to the fact that Federal was engaging in extensive negotiations with the Board concerning the completion of the projects following Harbert's purported default. According to Federal, a conflict arises from the fact that Harbert was not involved in those discussions. Second, Federal notes that Harbert has a duty of indemnification pursuant to their written agreement and that this duty exists even before the final dispute between the principal and obligee is resolved.

While the court has serious doubts as to whether the first situation constitutes an

---

5. *See, e.g., Zurn Indus., Inc. v. Acton Constr. Co.,* 847 F.2d 234, 236 (5th Cir.1988) (citing *Indemnity Insurance* with approval for the proposition that the Fifth Circuit has "consistently followed" the principle purpose test articulated in *Indianapolis*).

6. In 1981, the United States Court of Appeals for the Fifth Circuit was divided into two circuits: the Eleventh Circuit and the "new" Fifth Circuit. *See* Fifth Circuit Court of Appeals Reorganization Act of 1980, Pub.L. No. 96–452, 94 Stat.1995, 28 U.S.C. § 41.

7. Given that the binding nature of former Fifth Circuit decisions is not a novel concept in this circuit, the court is troubled that Harbert's reply brief does not cite any Fifth Circuit cases in discussing party realignment. *See* Harbert's Reply (Doc. 107). Because Harbert's brief identifies every circuit—except for the Fifth Circuit—that has adopted a realignment test, it is difficult to conclude that this omission was anything other than intentional.

8. In a desperate attempt to avoid Harbert's realignment, Federal contends that the court should not even consider realigning the parties because the Board purportedly "waived" its right to seek realignment by not doing so sooner. Needless to say, Federal cites no case law for this proposition, since it is well-settled that "a challenge to subject matter jurisdiction cannot be waived." *Alliance of Am. Insurers v. Cuomo,* 854 F.2d 591, 604 (2d Cir.1988) (citing *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986)); *cf. Fitzgerald v. Seaboard System R.R., Inc.,* 760 F.2d 1249, 1251 (11th Cir.1985) ("A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility exists that jurisdiction does not exist.").

"actual" or "substantial" controversy, it acknowledges that Harbert's possible duty to indemnify Federal at some point in the future could create an actual dispute between these parties.[9] That dispute, however, is merely secondary to the primary issue in this declaratory judgment action, which is whether or not the Board wrongfully breached its contractual obligations to Harbert during the course of the construction projects. The interests of Federal and Harbert coincide on that primary issue. Thus, it is necessary to align those parties as co-plaintiffs. *See United States Fidelity & Guar. Co. v. Algernon–Blair, Inc.,* 705 F.Supp. 1507, 1511–13 (M.D.Ala. 1988) (realigning defendant contractor as surety's co-plaintiff in declaratory judgment action where they both alleged that obligee of performance bond breached construction contract).

Because Harbert and the Board are both Alabama citizens, this realignment destroys the complete diversity of citizenship required by *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). Accordingly, because all of the parties' claims, counterclaims and cross-claims[10] are premised on diversity jurisdiction that does not exist, the entire case will be dismissed.

## III. CONCLUSION

For the foregoing reasons, the court concludes that there is no dispute between Federal and Harbert as to the primary issue in this declaratory judgment action. The court therefore **GRANTS** the Board's motion to realign these parties as co-plaintiffs. Because realignment places Alabama citizens on both sides of this controversy, there is not complete diversity of citizenship between the opposing parties as

9. The court notes that Federal's complaint does not seek a declaration that it is entitled to any form of indemnification from Harbert, nor does Harbert seek a counter-declaration that it has no duty to indemnify Federal.

is necessary to maintain this action under 28 U.S.C. § 1332. Accordingly, this action is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. Finally, because the court never retained subject matter jurisdiction over this action, all previous orders entered in this case are hereby **VACATED.**

10. Certain third-party claims in this action were also styled as cross-claims.