**PREMIER HOLIDAYS INTERNATIONAL, INC. and Daniel D. Delpiano, Plaintiffs,**

v.

**ACTRADE CAPITAL, INC. and Amwest Surety Insurance Company, Defendants,**

v.

**ING Baring (U.S.) Capital Markets, LLC. Third–Party Defendant.**

**No. 1:00–CV–0770–CAM.**

United States District Court,
N.D. Georgia,
Atlanta Division.

July 6, 2000.

C. David Johnston, Matthew Hearst Roane, Wagner Johnston & Rosenthal, Atlanta, GA, for Premier Holidays International, Inc., Daniel D. Delpiano, plaintiffs.

Joseph Duane Wargo, Jeanine L. Gibbs, Altman Kritzer & Levick, Atlanta, GA, Patrick D. Tobia, phv, Clemente Mueller & Tobia, Morristown, NJ, for Amwest Surety Insurance Company, plaintiff.

Joseph Duane Wargo, Jeanine L. Gibbs, Joseph Windsor Ozmer, II, Altman Kritzer & Levick, Atlanta, GA, Patrick D. Tobia, phv, Clemente Mueller & Tobia, Morristown, NJ, for Actrade Capital, Inc., defendant.

## ORDER

MOYE, District Judge.

The above styled case is before this court on defendant Amwest Surety Insurance Company's motion for remand [# 8].

## FACTS

On March 30, 1999, plaintiff Premier Holidays International, Inc. ("Premier") and defendant Actrade Capital, Inc. ("Actrade") entered into an agreement ("Buyer Acknowledgment") pursuant to which defendant Actrade agreed to allow plaintiff Premier to participate in Actrade's Trade Acceptance Draft ("TAD") Program. Essentially, this program is an arrangement that allowed Premier to use deferred payment drafts to purchase goods from its suppliers. By separate agreement with defendant Actrade, plaintiff Daniel D. DelPiano ("DelPiano") provided his personal guarantee for the Buyer Acknowledgment between plaintiff Premier and defendant Actrade ("Personal Guarantee").

As a condition of allowing plaintiffs to participate in Actrade's TAD Program, Actrade required a bonding company to issue a bond to insure the underlying transaction between plaintiffs and Actrade. On March 29, 1999, Amwest Surety Insurance Company ("Amwest") issued a bond in favor of defendant Actrade as the Obligee ("Bonding Agreement").

On March 2, 2000, defendant Actrade filed a lawsuit against Premier, DelPiano and Amwest in New York for claims arising from the above described facts and contracts. *Actrade Capital Inc. v. Premier Holidays International, Inc., Daniel DelPiano and Amwest Surety Insurance Company,* Civil Action No. 00–Civ.–1602 ("New York Action"). That case is currently pending before Judge Casey in the United States District Court for the Southern district of New York.[1] In the New

---

1. Actrade asserts that both the Buyer Acknowledgment and the Personal Guarantee contain forum selection clauses that require this litigation to proceed in New York. Actrade further asserts, and Amwest denies, that the Bonding Agreement also contains a forum selection clause that requires the New York District Court to exercise jurisdiction.

York Action, Actrade alleges, among other things, that Premier participated in Actrade's TAD Program, and Actrade purchased approximately $4,600,000.00 in TAD's from Premier's trade suppliers. Actrade contends, however, that plaintiffs Premier and DelPiano have refused to pay the obligations due to Actrade pursuant to Premier's Buyer Acknowledgment and DelPiano's Personal Guarantee. Actrade further contends that Amwest has refused to pay Actrade as required by the Bonding Agreement.

On March 10, 2000, plaintiffs Premier and DelPiano filed the instant action in Georgia in the Superior Court of Fulton County against defendants Actrade and Amwest. Plaintiffs are suing Actrade for breach of contract and fraudulent inducement. Contemporaneously with its filing, plaintiffs obtained a temporary restraining order restraining Actrade from pursuing and Amwest from paying any claim on the $4,000,000.00 surety bond issued by Amwest on Actrade's TAD Program.

On March 16, 2000, defendant Amwest filed a cross-claim against Actrade and a third-party complaint against ING Baring (U.S.) Capital Markets, LLC.

On March 24, 2000, defendant Actrade removed the instant case to this court based upon the existence of diversity of citizenship among the parties with an amount in controversy exceeding $75,000.00 exclusive of interest and costs.

On April 14, 2000, Actrade filed its motions to dismiss the present action based on improper venue and the forum selection clauses in the Buyer Acknowledgment, Personal Guarantee and Bonding Agreement. Alternatively, Actrade requests that the case be transferred to the Southern District of New York. Three days later, on April 17, 2000, defendant Amwest filed its motion for remand.

On June 22, 2000, the court held a hearing on an expedited basis so that, in the interests of judicial efficiency, an order could be entered on certain issues presented in this court before the scheduled hearing in the New York Action. The court will now rule on the motion to remand and will defer ruling on all other motions pending relevant rulings in the New York Action.

## LEGAL DISCUSSION

Amwest moves this court to remand this case pursuant to 28 U.S.C. §§ 1441 and 1446 because Actrade's Notice of Removal was deficient in that Amwest, a named defendant in this case, never consented to jurisdiction in the United States District Court for the Northern District of Georgia. Pursuant to 28 U.S.C. § 1446 and governing authority, all defendants must consent to or join the petition for removal, unless they fall under one of the excepted categories. *See Holder v. City of Atlanta,* 925 F.Supp. 783 (N.D.Ga. 1996) (citing *Kuhn v. Brunswick Corp.,* 871 F.Supp. 1444 (N.D.Ga.1994)). Under 28 U.S.C. § 1446, a defendant has 30 days after receipt of the complaint to file a notice of removal. All required defendants must express this decision to the court within the 30 day period. *See Landman v. Borough of Bristol,* 896 F.Supp. 406, 409 (E.D.Pa.1995) (holding that even an express statement of consent to removal given by the other defendant after the expiration of the statutory period could not forestall remand). Courts in this jurisdiction have gone so far as to hold that, even if a defendant answers within the 30 day period in the federal court, an answer that is silent on whether the defendant consents to the removal does not constitute proper consent. *Holder,* 925 F.Supp. at 783 (citing *Clyde v. National Data Corp.,* 609 F.Supp. 216 (N.D.Ga.1985)).

Removal is purely a statutory right, and the court should strictly construe all statutes in favor of state court jurisdiction. *In re NASDAQ Market Makers Antitrust Litigation,* 929 F.Supp. 174, 178 (S.D.N.Y.1996), *citing, Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 109, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). The removing party bears the burden of showing not only a jurisdictional basis for

removal, "[b]ut also necessary compliance with the requirements of the removal statute." *Albonetti v. GAF Corporation—Chemical Group*, 520 F.Supp. 825, 827 (S.D.Tex.1981). In this case, as to Amwest, Actrade's Notice of Removal said only that "[u]pon information and belief, defendant Amwest has not been officially served in the state action." This statement was incorrect in its supposition concerning service of process upon Amwest and silent as to whether or to what extent Actrade had attempted to verify its supposition (or to communicate at all with Amwest concerning Amwest's consent). Further, there was nothing in Actrade's statement concerning Amwest that suggested that Actrade was relying upon a realignment of Amwest as a party to justify Amwest's non-participation in removal. Actrade never filed an amended petition to explain the absence of Amwest's consent to removal. "[A] failure to set out such explanation renders the removal petition defective." *Courtney v. Benedetto*, 627 F.Supp. 523, 526 (M.D.La.1986), quoting, *Romashko v. Avco. Corp.*, 553 F.Supp. 391 (N.D.Ill.1983).

■ The first mention by Actrade of the re-alignment rationale for why Amwest's consent to removal was not necessary was contained in Actrade's response to Amwest's motion for remand, which was dated May 4, 2000.[2] Plaintiffs and Amwest argue that Actrade's failure to unequivocally raise that issue during the prescribed time period means that those grounds were lost to Actrade and cannot now be considered by this court. Plaintiffs and Amwest further argue that, even if the court were to construe Actrade's response to the motion for remand as an attempted amendment to its Notice of Removal, such amendment cannot cure Actrade's defective original petition for removal. The court disagrees.

The Eleventh Circuit Court of Appeals held:

> The time limitation for removal is not jurisdictional but rather is modal or formal and may be waived. Failure to object to defects constitutes waiver and may preclude a party from seeking remand to state court. However, the failure to waive the timeliness issue requires the district court to remand the case in most instances.... We do not read [this] as mandating remand in all cases where a removal petition is untimely. We are unwilling to allow a modal defect to pretermit our substantive inquiry. The timeliness of a removal petition is not jurisdictional, ... and we therefore have the power to review even an untimely petition.... While we emphatically disapprove of the [removing party's] tardiness, we will not order this cause remanded on technical grounds.

*Loftin v. Rush*, 767 F.2d 800, 805 (11th Cir.1985) (citations omitted). Consistently, the court in *Holder* held:

> Defendants also argue that the untimeliness of their removal notice does not mandate remand. Rather, remand based on a defect in the removal procedure is within the discretion of the Court. The Court agrees that an untimely removal notice does not require remand without any possibility for retention by the federal court, but notes that, absent waiver of the timeliness objection, the district court, in most cases, should remand an action that is removed improperly.

*Holder*, 925 F.Supp. at 785 (citation omitted). *See also Stuckey v. Illinois Central Railroad Co.*, 1996 WL 407247 (N.D.Miss. June 5, 1996) (finding that the removal petition was defective because it failed to

**2.** As Amwest points out, whether the deadline for the 30 days time period for the removal petition. is measured from the date of the initial faxing of the complaint by Premier's counsel to Actrade's counsel on March 10th, or from the date of service upon Actrade on March 17th, the amendment must have been

filed no later than April 17th. Even construing Actrade's response to the motion for remand as an amendment to its removal petition, it was filed 55 days from the fax and 48 days from personal service of the complaint. Either date is more than the 30 days allowed by the statute.

explain the non-joinder of a defendant who the court subsequently realigned as a party plaintiff; but that such a "procedural defect" was waived by the party moving for remand by not raising it); *Courtney*, 627 F.Supp. at 527 (holding that the right to a "late amendment" is "considered limited and cannot be used to cure a substantial defect in removal proceedings."). Accordingly, this court has the discretion to deny remand even where the removal is untimely.

■ In duly exercising this discretion, the court must determine whether defendant Amwest's interests in this case are aligned with plaintiffs, thus making its consent to removal unnecessary.[3] It is a long-standing principle of the federal judiciary that a court is not bound by the labels attached to the parties in the pleadings. Instead, as Justice Frankfurter stated in *Indianapolis v. Chase National Bank*, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941), it is the "duty ... of the ... federal courts to look beyond the pleadings and arrange the parties according to their sides in the dispute." *Id.* at 67, 62 S.Ct. 15 (citation omitted). *See also Eikel v. States Marine Lines, Inc.*, 473 F.2d 959, 963 (5th Cir. 1973) (holding that "it is well established that a court must look beyond the pleadings to the matters actually in controversy.").[4] Accordingly, federal courts are "required to realign parties according to their real interests so as to produce an actual collision of interests." *Still v. Debuono*, 927 F.Supp. 125, 130 (S.D.N.Y.1996), *citing, Chase National Bank*, 314 U.S. at 69, 62 S.Ct. 15.

■ Whether the "necessary collision of interests exists ... must be ascertained from the principal purpose of the suit" and the "primary and controlling matter in dispute." *Chase National Bank*, 314 U.S. at 69, 62 S.Ct. 15. Thus, it is not enough for there to be some controversy between the plaintiff and a named defendant, rather, there must be an adequate collision of interests as to the "principal purpose of the suit and the primary and controlling matter in dispute." *Indemnity Ins. Co. of North Am. v. First National Bank at Winter Park, Fla.*, 351 F.2d 519, 522 (5th Cir.1965).

In *Indemnity Ins. Co. of N. Am.*, 351 F.2d at 522–23, the Fifth Circuit Court of Appeals found reversible error in the district court's failure to align a surety (Indemnity) with the bank it insured (First National). Despite some controversy between Indemnity and First National, the court found that the primary issue in the case was the underlying question of liability between First National and another bank and that, as to this threshold and controlling issue of liability, First National and Indemnity shared a common interest. Accordingly, the court held that realignment was mandated. *See also Federal Ins. Co. v. Bill Harbert Constr.*, 82 F.Supp.2d 1331 (S.D.Ala.1999) (holding that the "primary and controlling matter" in dispute was the threshold issue of an alleged default on a construction contract, thus the contractor and its surety must be aligned as co-parties).[5]

■ Like *Indemnity Ins.*, this case involves a threshold issue of liability which is

---

**3.** Realignment will have no impact upon diversity in this case given that defendant Amwest is incorporated in Nebraska with its principal place of business in California, while Actrade is incorporated in Delaware with its principal place of business in New York.

**4.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), the Court of Appeals for the Eleventh Circuit adopted as precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.

**5.** *Harbert Constr.* involved a potential indemnity issue, as does the present matter. The *Harbert Constr.* Court held that the possibility that the contractor would have to indemnify the surety if the latter had to pay on the bond was "merely secondary" to the primary issue and thus not relevant to the realignment question. *Harbert Constr.*, 82 F.Supp.2d at 1338.

clearly the "primary and controlling matter" in dispute. The "principal purpose" of the present suit and the "primary and controlling matter" is plainly the underlying breach of contract action between plaintiffs and Actrade. As to this controlling issue, there is no collision of interests between plaintiffs and their surety, defendant Amwest. Instead, there is an identity of interests between these parties. If plaintiffs succeed in this litigation, defendant Amwest also succeeds as it will assert that it owes no money under the Bonding Agreement. Should plaintiffs fail, however, Amwest also fails in that it becomes liable for $4,000,000.00 on the Bonding Agreement. Moreover, this non-collision of interests is apparent where the only relief sought "against" Amwest is an injunction preventing it from paying on the surety bond. As defendant Amwest could hardly be in a rush to pay $4,000,000.00, this prayer for relief certainly fails to create adversity or a "collision of interests" between Amwest and plaintiffs. Thus, on the threshold and controlling issue in dispute, plaintiffs and their surety— defendant Amwest— have a total harmony of interests and they must be aligned on the same side in the dispute.

■ Defendant Actrade then asserts that, because the question of realignment is a threshold issue for this court before deciding on the propriety of the removal, once the court determines that a non-joining defendant must be realigned as a party plaintiff, a removal petition which lacks the non-joining party's consent cannot be considered defective.[6] Regardless of whether the realignment issue is a threshold question, the court's ruling here is the same: Even if the removal notice was defective, the court now holds that defendant Amwest must be realigned as a plaintiff and its consent to removal is unnecessary and irrelevant. Furthermore, the court notes that no policy is served by allowing a mislabeled "defendant" to defeat the true defendants' right to remove the case by withholding its consent. As the court in *First National Bank of Chicago* held:

> The joinder requirement is designed only to insure a unanimous choice of a federal forum by the defendants. It cannot reasonably be understood to give a party who in reality occupies a position in conflict with that of other defendants a veto over the removal of the action.

*Id.* at 790. *See also Sersted,* 471 F.Supp. at 299–300 (same); *Still,* 927 F.Supp. at 130–31 (holding that "[s]ince [the defendants opposing removal] are, practically speaking, in the shoes of petitioners, they should not have the power to frustrate th[e] right ... [of the removing defendant's] statutory right to remove this case to a federal court."); *Schouman v. Schouman,* 1996 WL 721195, * 4 (D.Mass.

---

**6.** In *First National Bank of Chicago v. Mottola,* 302 F.Supp. 785 (N.D.Ill.1969), aff'd sub nom, *First National Bank of Chicago v. Ettlinger,* 465 F.2d 343 (7th Cir.1972), the court stated:

> As in cases of original diversity jurisdiction, where the removal jurisdiction of a federal court is invoked on the basis of diversity, the characterization of a party as a defendant or plaintiff in the state action is not determinative. The court is first obliged to examine the substantive interests of the parties and align them in a manner that is consistent with their actual interests. The propriety of removal is then considered in the light of the parties respective positions in the suit.

*Id.* at 789. *See also In re Removal Cases,* 100 U.S. 457, 469, 10 Otto 457, 25 L.Ed. 593 (1879) (holding: "[T]he mere form of the pleadings may be put aside, and the parties placed on different sides of the matter in dispute according to the facts. This being done, when all those on one side desire removal, it may be had."); *Pennell v. Collector of Revenue,* 703 F.Supp. 823, 824 (W.D.Mo. 1989) (holding that "[a]s a threshold question the Court must determine the proper alignment of the parties before the Court."); *Dawson v. Legion Indem. Co.* 2000 WL 124813, * 1 (N.D.Tex. Feb.1, 2000) (realigning defendant and upholding removal because "court has affirmative duty to look beyond the pleadings and arrange the parties according to their sides in the dispute."); *Sersted v. Midland–Ross Corp.,* 471 F.Supp. 298, 299 (E.D.Wis. 1979) (finding that because the non-joining defendant "will be realigned as a party plaintiff ... [it] need not have joined in the petition for removal").

Dec.10, 1996) (realigning defendant and upholding removal because "[w]here one defendant's interests are adverse to that of the other, and are in fact more closely aligned with that of the plaintiff, a court will not allow artful pleading to defeat the removal jurisdiction granted by Congress.").[7]

Therefore, the court hereby REALIGNS defendant Amwest as a plaintiff and DENIES Amwest's motion to remand.[8] All future pleadings should be captioned as *Premier Holidays International, Inc., Daniel D. DelPiano and Amwest Surety Insurance Company v. Actrade Capital, Inc. v. ING Baring (U.S.) Capital Markets, LLC*

### CONCLUSION

In sum, the court hereby DENIES defendant Amwest Surety Insurance Company's motion for remand [# 8].

---

7. The parties have not cited, and the court has not found, any legal authority where a court holds that removal is improper because the realignment request was not made in the removal petition. Actrade points out that such an argument would put form (a purported defect in the removal petition itself) over substance (the true alignment of the parties as determined by the court).

8. In further support of its contention that Amwest's consent to removal was unneces- sary, Actrade alleges, among other things, that the unusual procedural background and history of this case indicate that Amwest and plaintiffs are in fact acting in concert with an obvious alignment of interests and that the nature of the relief sought against defendant Amwest renders it, at best, a nominal party whose consent to removal is unnecessary. In view of the present ruling, the court need not address these allegations.